## APPEAL OF B. WOLFF, JR., EXR.

[ESTATE OF MARTHA McD. SMITH.]

FROM THE DECREE OF THE ORPHANS' COURT OF ALLEGHENY COUNTY.

Argued November 2, 1888—Decided January 7, 1889.

1. Where land, the legal title to which is in a decedent's estate, is claimed by a son, under a resulting trust alleged to arise from the purchase of the land by the decedent with money charged to the son as an advancement at a date prior to the purchase, to sustain the trust there must be proof that the purchase was made with the money furnished as an advancement when the charge thereof was made.

2. A letter written by the decedent, two years after the purchase of the land, disclosing a promise and intention that the son should have the land, afterwards unfulfilled, is insufficient, in connection with the

Decision of Court below.

advancement charged as referred to, to support an express trust therein, in the absence of proof of an actual advancement appropriated at the time to the purchase of the land: Beck v. Graybill, 28 Pa. 66, and Morey v. Herrick, 18 Pa. 123, distinguished.

Before GORDON, C. J., STERRETT, GREEN, CLARK, WILLIAMS and HAND, JJ.; PAXSON, J., absent.

No. 87 October Term 1888, Sup. Ct.; court below, No. 221 June Term 1887, O. C.

On June 21, 1887, B. Wolff, Jr., executor and trustee under the last will of Martha McD. Smith, presented his petition to the Orphans' Court for leave to sell under the act of April 18, 1853, P. L. 503, the interest of the testator in certain real estate in the Eleventh ward, Allegheny City, called Sunny Slope, being the undivided one fifth part thereof. The petition set forth, inter alia, that the said real estate in its entirety had been owned by Charles G. Smith (the husband of the petitioner's testatrix), who had died seised thereof, and the same had passed under the intestate laws to his five children, sons of said testatrix, to wit: George G., Luther H., Zantzinger McD., Anna H. and Martha McD.; that the interest of Zantzinger McD. Smith in said real estate had been sold at sheriff's sale and conveyed to Martha McD. Smith, the testatrix, by deed dated February 24, 1877; and that the said testatrix had died in 1880, etc.

To the citation awarded upon the filing of said petition, Zantzinger McD. Smith made answer claiming, upon the grounds hereinafter appearing, that the petitioner's testatrix in her lifetime and at the time of her death held the title to said interest in said real estate, not in her own right, but in trust for the respondent, etc.

Issue having been joined by replication filed, the cause was heard upon testimony taken on November 16, 1887, before OVER, J., who thereafter filed the following decision:

FINDINGS OF FACT.

The petition filed in this case avers that the decedent died seised of the undivided one fifth interest in fee in certain real estate known as Sunny Slope, situated in the Eleventh ward

of the city of Allegheny, which had been sold to her at sheriff's sale as the property of her son Zantzinger McD. Smith, who had inherited the same from his father, and prays for an order authorizing the executor to sell the same. A citation was awarded upon the petition, and in answer thereto Zantzinger McD. Smith alleges that the decedent held this interest in trust for him.

It appears from the evidence that one Fowler held a judgment against the respondent for $7,290.82, which was a lien on his interest in the land. For the purpose of having the land purchased by his mother at a sheriff's sale on said judgment, he joined with her in executing a promissory note upon which they borrowed $2,500 on May 22, 1874, which she received. The negotiations with Fowler being protracted, this money was used by her for other purposes. She paid the note on June 8, 1876, and charged the amount with the interest paid thereon against the respondent as an advancement. It was also included in a statement of advancements to him made out by the executor after her death. Mrs. Smith finally purchased the respondent's interest in the land, worth then about $8,000, at sheriff's sale, for the sum of $2,100, on September 4, 1876, the deed being acknowledged on February 24, 1877.

He had previously conveyed to his mother a farm in Beaver county, which was subsequently sold at sheriff's sale, and she wrote to him from Santa Fé, N. M., concerning it and the Sunny Slope property as follows:

"Santa Fé, October 14th, 1878.

MY DEAR ZANTIE:

I am very sorry you lost the farm, but times are so hard I suspect Lute couldn't make the payment. There is so much to meet that he can't send money to take us home. I will satisfy those judgments when I return, and have your one fifth of Sunny Slope fixed so that it will not follow the farm, as you fear it may, and so you will have it free from the estate, as I promised you should have them both. I cannot answer now about the loss of the farm, but all the money advanced you will be taken from your share of the estate. . . . . .

Your affectionate mother,

M. McD. S."

Decision of Court below.

A small portion of the respondent's interest in Sunny Slope was not included in the sheriff's sale, and he at the request of the executors executed and delivered to them a quit claim deed for that portion.

By agreement between the respondent and executor he has made sales of seven lots, included in the trust, for $1,095, which have been approved by the court, the purchase money being held by him to be paid to the respondent if the equitable title is found to be vested in him.

OPINION.

It is contended by counsel for respondent, that under the facts of this case, Mrs. Smith held the real estate in dispute upon an express trust, founded upon a valuable consideration, for his benefit, and that the letter of October 14th was such a declaration thereof in writing, as is required by the fourth section of the act of April 22, 1856, P. L. 533.

In Dyer's App., 107 Pa. 454, it was held "that the true intent and meaning of the act of 1856, is that when a trust is set up, the written evidence thereof, signed by the party holding the legal title, should contain within itself all that is necessary to enable a chancellor to declare the trust and make a decree in favor of the beneficiaries, and that oral evidence cannot be introduced to supply any missing links in the chain of testimony." Tested by this rule, the letter does not seem to be a sufficient writing to establish an express trust. As it does not give the location or boundaries of the property, nor the county or state in which it is situated, it is evident that a chancellor, without the aid of oral evidence, could not designate the subject-matter of the trust, and that the writing does not contain all that is necessary for him to declare it and make a decree.

The next question for consideration is, whether there was a resulting or implied trust. For the purpose of having Mrs. Smith acquire the legal title to his interest in Sunny Slope, the respondent joined with her in executing a promissory note for discount; the proceeds of which were to be used by her for that purpose. She paid the interest and principal of this note, and charged the amount to the respondent. Some question has been raised as to whether this should be considered as an advancement to him. It seems clear, however, that it was so

intended by both of them. It appears that she made payments of various kinds, and in large amounts, for all of her sons. And Luther H. and George G. Smith, two of them, testify that it was the understanding with her that the payments made for all of them were to be charged against them as advancements. L. H. Smith made charges as agent for his mother, and rendered her quarterly statements, in which the charge of this note was included. We also have her statement to the respondent in the letter of October 14, 1878: "I cannot now answer about the loss of the farm, but all the money advanced you will be taken from your share of the estate." The reasonable inference from this testimony and the attending circumstances is, that when the note was given it was the understanding between the respondent and his mother that it was to be paid by her and charged against him as an advancement. But even if this was not the original agreement, it is clear that the amount paid by her was treated by them as an advancement. It being an advancement, the money was a gift to him, subject only to be deducted from his share in the estate. It is true it was in her possession, but she held it in trust for a specified purpose, and when in fulfilling that she purchased the real estate, it was in effect his money she used in making the purchase. She therefore held the title subject to an implied or resulting trust in favor of the respondent: McMurray's App., 101 Pa. 421.

It is contended, however, that even if there was a resulting trust, the respondent's right of action is barred by the sixth section of the act of April 22, 1856. It provides, inter alia, that no action shall be maintained "to enforce any implied or resulting trust as to realty, but within five years after such trust accrued with the right of entry, unless such trust shall have been acknowledged by writing to subsist by the party to be charged therewith within the same period." As the trust accrued with the right of entry more than five years prior to the inception of these proceedings, the statute is a bar, unless the letter of October 14, 1878, which was written within two years after the trust accrued, is such an acknowledgment of its subsistence as the statute requires. If the same requisites are necessary as in a declaration of an express trust, under the authority of Dyer's Appeal, supra, it seems this letter would not be. It is competent, however, to establish a resulting trust

Decision of Court below.

by parol evidence, and it being established, all that the statute requires is that its subsistence shall be acknowledged by writing. Mrs. Smith in the letter acknowledges that the respondent has still a one fifth interest in Sunny Slope, promises to have it fixed so that he will not lose it as he did the farm, and so that he will have it free from the estate as she promised him he should. This is clearly an explicit acknowledgment of the subsistence of the trust, and if the letter be supplemented by the oral evidence competent to establish the trust, a chancellor would have no difficulty in making a decree in favor of the beneficiary. It seems clear, therefore, that this letter is a sufficient acknowledgment in writing of the implied or resulting trust, to remove the bar of the statute.

Some evidence was offered tending to show that Mrs. Smith, when the advancement was made, and at her death was insolvent. She owned very valuable real estate, but was much involved, and had her creditors pushed their claims it is doubtful if her estate, at a forced sale, would have fully liquidated them. Her executors, however, since her death, have applied the income to the payment of the debts, which have been much reduced, and the estate is now solvent. And as the question here is not between the creditors and the respondent, this evidence is not considered material.

The respondent was examined as a witness in his own behalf, subject to objections to his competency. It was claimed that he was competent under the act of May 23, 1887, P. L. 158, which makes parties in interest competent witnesses when "the issue or inquiry be devisavit vel non or be any other issue or inquiry respecting the property of a deceased owner, and the controversy be between parties respectively claiming such property by devolution on the death of such owner." Here, however, the respondent is not claiming by devolution on the death of the owner, but under a trust created in her lifetime, and by a title adverse to that of the estate. Were he a stranger, it is clear he would not be competent, and in asserting the trust he claims as such, and not as an heir. The objection must therefore be sustained, and his evidence excluded. He was also incompetent to testify that a copy of a letter produced by him and offered in evidence was a correct copy of one written and mailed by him to his mother. If this

testimony were received, it would establish (1) the fact that he had written the letter; (2) that he had made a copy of it, and (3) that the one produced was a correct copy; thus permitting him to testify to the contents of the letter. This testimony and the copy of the letter must be also excluded. But, notwithstanding the rejection of this testimony, the facts and law of the case seem to be with the respondent; the petition for sale must therefore be dismissed, without prejudice, however, to the sales already made, and the fund in the hands of the executor arising therefrom, less the costs of sale, be paid to the respondent.

The foregoing decision having been made, the petitioner filed various exceptions thereto some of which were that the court erred:

1. In finding that there was a resulting trust: (1) Because there was not sufficient evidence to support such finding; (2) because it was not in accordance with the issue; (3) because, although the court held there was not sufficient evidence to support an express trust as to the land, yet it was held that there was an express trust as to the money.[1]

2. In finding that the purchase money of the respondent's interest in Sunny Slope was an advancement by his mother, and that "she held it in trust for a specified purpose, and when in fulfilling that she purchased the real estate, it was in effect his money she used in making the purchase. She, therefore, held the title subject to an implied or resulting trust in favor of the respondent."[2]

On March 19, 1888, the court, Over, J., disposed of said exceptions as follows:

The finding that the money was borrowed on the joint note of Mrs. Smith and the respondent for the purpose of having her purchase his real estate at a sheriff's sale on the Fowler judgment, is erroneous, as it does not appear from the evidence that a sheriff's sale was then contemplated, and it does appear that it was the intention to apply the money to the payment of the judgment. It was borrowed, however, to relieve his real estate from the lien of this judgment and save it for him, and as the purchase by her carried out this general pur-

pose, the fact that the money was not applied as originally contemplated, is not material. Had it been applied to the payment and satisfaction of the judgment, there would not have been a sheriff's sale, and the title of the respondent would not have been divested.

It is claimed by petitioner's counsel that the answer of the respondent shows that the money used in the purchase of the real estate was not an advancement to him. But, as it was not admitted to be true, nor offered in evidence by the petitioner, it could not be considered in finding the facts of the case. And as it is consistent with the finding of the facts and law, the trust averred in it being substantially found to exist, no question as to the pleadings can arise. It is not necessary, therefore, to consider whether petitioner's counsel is correct in his construction of the answer.

None of the exceptions seem well taken, except the second, as to the finding of facts, and as it is not material they are all dismissed.

Thereupon the petitioner took this appeal, and assigned as error, inter alia, the overruling of his exceptions.[1] [2]

*Mr. W. K. Jennings* (with him *Mr. R. D. Wilson* and *Mr. W. B. Negley*), for the appellant:

While we contend there was no trust, yet if there was, it must necessarily be an express trust, and the position of the court is untenable for many reasons.

1. A resulting trust is raised only by fraud in obtaining the title, or from payment of the purchase money when the title is acquired: Barnet v. Dougherty, 32 Pa. 371. In the case at bar the following elements are wanting: (1) No fraud is or can be alleged; (2) There is no allegation or pretence that the respondent paid any money at the time the title was acquired. But it is contended that the money paid by Mrs. Smith was virtually the money of the respondent, because, as is alleged, it had been borrowed originally for the purpose of buying the judgment against the respondent, and, not having been used as expected, was in some way transmuted into a trust fund out of which the payment was made.

2. The objection to this is: (1) It is not true in point of

fact; (2) The money to be advanced by Mrs. Smith was to be repaid, and if Mrs. Smith should die before it was repaid, it was to be charged with other advancements. But an "advancement is a pure and irrevocable gift by a parent in his lifetime to his child, on account of such child's share of the estate after the parent's death:" Miller's App., 31 Pa. 337. An advancement cannot be recovered back by the parent: Yundt's App., 13 Pa. 575; High's App., 21 Pa. 283; Eshleman's App., 74 Pa. 42. Once a gift, always a gift; and once an advancement, always an advancement: Miller's App., supra; Lawson's App., 23 Pa. 85; Oller v. Bonebrake, 65 Pa. 344.

3. An advancement depends upon the intent, at the time of making the gift. That intent must be proved to have existed at the time of the transaction, and by contemporaneous acts and declarations of the parties, shown to have been a part of the res gestæ, and accompanying the acts done: Weaver's App., 63 Pa. 309; Miller's App., 40 Pa. 57. Purposes expressed before and after the gift, will not change it into an advancement, if the evidence indicates that at the time of the gift it was not an advancement: Potts' App., 10 Cent. R. 415.

4. "A trust which arises or results by implication or construction of law from the payment of the purchase money of land, may unquestionably be established by parol evidence, but it must be clear and unequivocal that the money was paid at the time. A subsequent payment, however clearly proved, will not answer the requirements of the law, . . . . . nor would a subsequent advance of money to the purchaser, after the purchase is complete and ended, alter the case:" Nixson's App., 63 Pa. 279; Buchanan v. Streeper, 11 W. N. 434. The strong expressions of Mr. Justice LOWRIE, in Cox v. Cox, 26 Pa. 375, might with propriety be applied to this case. Moreover, the trust, if any exist, is barred by § 6, act of April 22, 1856, P. L. 533.

*Mr. George W. Guthrie*, for the appellee:

1. The letter of Mrs. Smith, dated October 14, 1878, is not a mere promise to give the property in controversy to the respondent, but it is a clear and unequivocal acknowledgment that she already holds it in trust for him, and that the money

paid for him should be treated as an advancement. It is not a mere expression of an intention, inchoate or otherwise, but a solemn written acknowledgment of a prior obligation. And there is nothing in the case to justify a suggestion that she ever changed her mind.

2. "If one should advance the purchase money and take the title to himself, but should do this upon the account and credit of another, he would hold the estate upon a resulting trust for the other." The rule is so laid down in Perry on Trusts, § 133, to the same effect in Lewin on Trusts, 200, and is fully sustained by the decisions in this and other states: Beck v. Graybill, 28 Pa. 66; Morey v. Herrick, 18 Pa. 123; Page v. Page, 8 N. H. 187; Boyd v. McLean, 1 Johns. Ch. 582; Runnells v. Jackson, 1 How. (Miss.) 358; Loundsbury v. Purdy, 18 N. Y. 515; Buck v. Pike, 2 Fairf. (Me.) 9. We submit, therefore, that to establish a resulting trust, "it is not essential that the money should come directly from the cestui que trust, if it satisfactorily appear that the person who supplied it intended it as a gift or loan to such cestui que trust:" Kelly v. Johnson, 28 Mo. 249.

3. To defeat the trust thus established, the petitioner pleads the limitation of § 6, act of April 22, 1856, P. L. 532. The answer to this is, (1) there is no evidence of any adverse holding by Mrs. Smith in her lifetime, or by her heirs or representatives after her death, and without that the bar of the statute will not apply: Clark v. Trindle, 52 Pa. 492; McNinch v. Trego, 73 Pa. 52; (2) we have the written acknowledgment of the trust by the letter of October 14, 1878. The description of the land in this letter is "Your one fifth of Sunny Slope," which is a sufficient identification of the land: Bailey v. Allegh. N. Bank, 104 Pa. 434; Phillips v. Swank, 120 Pa. 76; 2 Whart. on Con., § 661, n. 1; 1 Reed, Statute of Frauds, §§ 409, 410; Fry on Specif. Perf., §§ 209, 210, 211; Shardlow v. Cotterell, 2 Ch. D. 90.

4. It is true that a mere intention to create a trust, or a voluntary agreement to do so, will not be binding. But equity will compel specific performance of an agreement to create a trust when a valuable consideration has been given, and will enforce a perfected trust even though voluntary. Such is the rule, in substance, as laid down in Perry on Trusts, §§ 95, 96,

and see Raybold v. Raybold, 20 Pa. 308; Crawford's App., 61 Pa. 52; Bond v. Bunting, 78 Pa. 210; Urann v. Coates, 109 Mass. 581; Adams v. Adams, 21 Wal. 185. The English cases are equally strong, as will appear by reference to Thorpe v. Owen, 5 Beav. 224; Brosier v. Brereton, 15 Beav. 221; Gray v. Gray, 2 Sim. N. S. 273; Vandenberger v. Palmer, 4 K. & J. 204: Way's Trusts, 2 Deg. J. & Sm. 365; Fletcher v. Fletcher, 4 Hare 67; Wheatly v. Purr, 1 Keen 550; Hope v. Harman, 11 Jurist 1097.

OPINION, MR. JUSTICE GREEN:

The one fifth interest of Zantzinger Smith in the property called Sunny Slope was sold by the sheriff on September 4, 1876, and the deed therefor was acknowledged February 24, 1877. Mrs. Martha McD. Smith, Zantzinger's mother, was the purchaser, and the deed was made to her. The purchase money was $2,100, and it was paid by the purchaser, just when does not appear, but certainly not earlier than the day of sale, September 4, 1876. It is not alleged that any part of the particular money which was paid for the purchase was furnished by Zantzinger Smith. Nevertheless, it is claimed that the property purchased belonged to him by way of a resulting trust. In order to make out this claim, it is alleged that at a prior date a sum of money, $2,500, was borrowed by Mrs. Smith upon a note, signed by her son and herself, from one J. H. Miller, the purpose of which was to pay off a judgment held by one Fowler against Zantzinger; that this money was charged as an advancement by Mrs. Smith against her son, and, therefore, is to be treated as his money; and that this was the money with which the property was purchased and paid for.

We encounter such serious difficulties in the way of connecting this money with the purchase at sheriff's sale, that we are unable to agree with the learned court below, who found that a resulting trust was thereby created. In point of fact not a dollar of the money was ever furnished by Zantzinger. On the contrary, he was enormously indebted to his mother for numerous sums of money which she had either lent or advanced to him at various times, both before and subsequently to this transaction. The $2,500 were borrowed on May 22, 1874, from J. H. Miller. What was done with that money we

cannot discover from any testimony in this record. It was not
applied to the payment of the Fowler judgment. It was not
charged to Zantzinger in the account kept by his brother of
the various sums paid to or for Zantzinger, at or anywhere
near the time it was borrowed from Miller. The money, of
course, belonged to Mrs. Smith, and as the testimony shows
that she was constantly in need of money to supply the de-
mands of her three sons, it doubtless was consumed in that
way. The Miller note was finally paid, according to the
account kept by Luther, on June 8, 1876, and the whole
amount, which was then $2,875.50, was charged, on that day,
to Zantzinger. The note was really for $2,700, the odd $200
being for some other money which Zantzinger owed to Miller.
The remainder of the sum was doubtless for interest. There
is not a particle of proof that the very money which was re-
ceived from Miller was kept unused during all the time from
May 22, 1874, until June 8, 1876. On the contrary, it cannot
be doubted, from the testimony, that it was used long before;
most likely as soon as it was obtained. When the note was
paid, Luther entered the whole amount as a charge against
Zantzinger. Whether his mother directed this, or was in-
formed of it, or ever had knowledge of it, we are not informed,
and a most important element on a question of advancement
is therefore lacking. But even if the money was charged as
an advancement with her knowledge, and in point of fact the
advancement never was made, the only necessary legal effect
of that fact would be that it must be stricken out of the account
of advancements, and the total amount of advancements re-
duced that much. In any ordinary case, where the question
was how much had been advanced, this certainly would be the
manner in which the matter would be disposed of.

The payment on June 8, 1876, was not a payment to Zant-
zinger but to Miller, and therefore it could not of itself operate
as an advancement or as proof of one. If the money received
from Miller had been given to, or paid for, Zantzinger, it could,
when paid back to Miller, or when previously paid to or for
Zantzinger, be properly charged as an advancement, but, if so,
it was exhausted as an advancement by its previous application
and could not be used in that way for any future purpose. If
it was used by Mrs. Smith for any other purpose, then it was

error in Luther to charge it as an advancement against Zantzinger, and the proper remedy for that error is to strike it out of the account. When the Miller note was paid, it was Mrs. Smith's money, not Zantzinger's, that paid it, and hence there is no room for a resulting trust in favor of Zantzinger to be founded upon that payment. Of course, if she had then received the money, instead of paying it, and had charged it as an advancement, and subsequently used it to buy the interest in Sunny Slope for Zantzinger, a resulting trust would have arisen in his favor, and the case would have come within the ruling in Beck v. Graybill, 28 Pa. 66, and Morey v. Herrick, 18 Pa. 123. But of all this there was not a particle of testimony. On the contrary, the positive proof is that the payment of June 8, 1876, merely extinguished a personal liability of Mrs. Smith's. Granting that because Zantzinger also signed the Miller note, and that it was the original intention to use the money derived from that note to pay off the Fowler judgment against Zantzinger, that intention was never carried out, the money was used for other purposes, and it would not be possible to build a resulting trust in the ultimate purchase upon that original frustrated intention. Moreover, if the money had been applied to the payment of the Fowler judgment, the title would not have been acquired, only a debt of Zantzinger's would have been paid, and this would have afforded the basis of a charge against Zantzinger, either as a loan or advancement, according to the intention of Mrs. Smith. There is, therefore, no sufficient identity between the original intended transaction and the ultimate one, as it is now claimed for Zantzinger, to justify the establishment of the latter without further proof. But there is no such proof in the case. In point of fact when the property was sold by the sheriff it was purchased by Mrs. Smith on September 4, 1876. It was paid for by her with her own money. There is no charge of this money as an advancement to Zantzinger; there is no testimony in the case that has any reference to it, in the point of view of its being, or being intended to be treated as an advancement.

But it is argued that Mrs. Smith held the land upon an express trust for Zantzinger, and in support of this theory a letter is given in evidence, written by her to him in October, 1878. The material part of that letter is in the following words:

Opinion of the Court.

" I am very sorry you lost the farm, but times are so hard I suspect L. couldn't make the payment. There is so much to meet that he can't send money to take us home. I will satisfy those judgments when I return and have your one fifth of Sunny Slope fixed so that it will not follow the farm, as you fear it may, and so you will have it free from the estate, as I promised you should have them both. I cannot answer now about the loss of the farm, but all the money advanced you will be taken from your share of the estate." Leaving out of view the consideration whether there is a sufficiently definite description of the land to take the case out of the operation of the statute of frauds, contained in this letter, we are quite unable to agree that any of the terms of the letter either create a trust or prove a subsisting one. Mrs. Smith promises that she will satisfy certain judgments when she gets home, and that she will have Zantzinger's one fifth of Sunny Slope fixed so that it will not follow the farm, so that he will have it free from the estate. Undoubtedly this language proves what she intended to do, but that is all. An unfulfilled intention, however, cannot create an estate in land, either legal or equitable. There must be something more. That which she said she would do she never did do, and hence her declaration has no greater force than an unperformed promise. It is argued, however, that she also said in the same connection, " as I promised you should have them both ; " and that in some way we must treat this as a recognition of a subsisting trust. Unfortunately that is precisely what it is not. A promise by one that another shall have his land is not a declaration that he already does have it. It is but a promise at the very best that something shall be done, not the assertion that it has been done. If it has been done, the promise that it shall be done is vain and meaningless ; the two ideas are utterly inconsistent. The concluding sentence, " but all the money advanced you will be taken from your share of the estate," is not of the slightest value in this connection. It proves nothing as to an existing trust, unless there is proof of an actual advancement appropriated to the purchase of the subject of the trust, and of this, as we have already shown, there is no proof. Had the $2,100 paid for the land when it was bought been charged as an advancement, or had it been shown that the money charged on June

8, 1876, had specifically been appropriated to the purchase of the land, the appellee's claim would have been made out, but the absence of any such proof is simply fatal to his case.

> The decree of the court below is reversed at the cost of the appellee, and the record is remitted for further proceedings.

