# McKean and Elk Land and Imp. Co., Appellant, v. Clay et al.

*Constructive trust—Purchase of realty by agent—Act of April 22, 1856, § 6.*

A constructive trust, arising by legal implication from a purchase by an agent at a judicial sale of the land of his principal, is clearly within the operation of the sixth section of the act of April 22, 1856; and an action to enforce the trust must be brought within the time thereby limited.

Argued May 5, 1892. Appeal, No. 17, July T., 1892, by plaintiff, from judgment of C. P. Elk Co., May T., 1887, No. 19, on verdict for defendants, Harry G. Clay et al. Before PAXSON, C. J., STERRETT, GREEN, McCOLLUM and MITCHELL, JJ.

Ejectment.

The facts appear by the following opinion of the court below discharging rule for new trial, by MAYER, P. J.:

" This was an action of ejectment brought by the plaintiff, ' The McKean and Elk Land and Improvement Company,' against the defendants, William Hacker and Henry G. Clay, to recover possession of certain tracts of unseated land situate in Jones township, in the county of Elk. It was admitted on the trial that the legal title to the land in controversy was vested in the plaintiff on March 29, 1856.

" The defendants claim to hold possession through a title derived from Thomas L. Kane, who purchased the land in controversy on Sept. 21, 1874, at a sheriff's sale had in Elk county, and at two successive treasurer's sales in Elk county for arrearages of taxes, the first on June 8, 1874, and the second on June 12, 1876. From these treasurer's sales there was no redemption.

" A judgment was entered in the district court of Philadelphia (now Court of Common Pleas No. 2) on March 13, 1874, in favor of Robert Patterson and William Hacker, and against the McKean and Elk Land and Improvement Co., for the sum of $12,341, on a bond and warrant of attorney, dated May 25, 1872. An exemplification of the record of this judgment was taken from the district court of · Philadelphia and entered in the court of common pleas of Elk county. Upon this judgment execution process was issued, and the lands of the defendant levied upon and sold by the sheriff of Elk county to Thomas L. Kane on Sept. 21, 1874, to whom a deed was subsequently delivered by the sheriff.

" The taxes on the lands for 1872, 1873, 1874 and 1875, became due, and, not being paid, the lands were sold by the treasurer of Elk county on June 8, 1874, and June 12, 1876, to Thomas L. Kane, to whom deeds were subsequently delivered by the treasurer. Thomas L. Kane conveyed the lands, by deed dated March 9, 1875, to Samuel Spackman, who, by deed of the same date, conveyed them to defendants. Prior to Feb. —, 1874, H. G. Clay had been a director and William Hacker the secretary and treasurer of the company, but at the time of these several sales to Thomas L. Kane, and at the time they acquired the title, their official relations with the company had terminated, and a new board of directors and a new secretary and treasurer had been elected in their places.

" To defeat the title acquired by Kane under the sheriff's sale and the two treasurer's sales, it was contended on the part of the plaintiff that Thomas L. Kane, at the time of these several sales, was the agent of the company, and consequently could not purchase the lands and acquire a title which could be set up in antagonism to that of his principal; that the sale to him was absolutely void, and that defendants acquired their title with notice and knowledge of such agency, the one having been a director, and the other secretary and treasurer of the company. The minutes of the company were in evidence, and show that the appointment of general agent of the company was tendered on Sept. 9, 1858, to Gen. Kane, which was accepted by him. He acted as agent until June, 1861, when he went to the war. Upon his return, in the latter part of 1863, he resumed his agency, and continued to act until June 17, 1867, when he tendered his resignation as general agent, which was accepted on August 27, 1867, and Hibberd Yarnall appointed general agent in his place. On Sept. 16, 1867, Kane was appointed special agent to make sales of the company's lands, and to receive as compensation five per cent on all sales made by him. In the latter part of the year 1868 Gen. Kane assumed an attitude of hostility to the company, and instituted legal proceedings against it in the court of common pleas of McKean county, whereupon the directors, by resolution, called upon him to resign as special agent, which he did on Feb. 6, 1869. On Feb. 15, 1869, Hibberd Yarnall resigned as general agent, and Captain A. A. Clay was appointed in his place, who continued until May 8, 1874, when, by a resolution of the board of directors, his services were dispensed with for want of funds to compensate him.

" It appears from the minutes that, on April 22, 1874, at a meeting of the board of directors, the company was advised through their agent, A. A. Clay, that the taxes for 1872 and 1873, which amounted to $13,200, had to be paid, but, as the minutes show, the company was unable to raise the money for the payment of the taxes, and consequently the lands were sold and purchased by Thomas L. Kane on June 8, 1874.

" After the resignation of Thomas L. Kane, on Feb. 5, 1869, as special agent, there is nothing on the minutes to show that he was at any time thereafter the agent of the company. The

only evidence adduced, tending to show that he was an agent, appears in the testimony of John F. Bickel, a witness for the plaintiff, who testifies that he was present at the annual meeting of the stockholders of the company in February, 1874, at which Gen. Kane was present: ' Q. Where were you on the day of the annual election of the directors of the McKean and Elk Land and Improvement Co., in 1874? A. I was at that meeting. Q. State whether you saw Gen. Kane there? A. I did, sir. Q. State whether Mr. Fraley, the president of the board, was there? A. He was. Q. Was Mr. Watts there, who was elected that day? A. He was there. Q. What was said, if anything, by Mr. Watts to President Fraley, and what was his reply as to the relationship Gen. Kane stood in regard to the company? A. There was a question broached by Mr. Watts as to the general condition of the company, and Mr. Fraley replied that Gen. Kane, our agent, is present, and can give you a general statement of the condition of the affairs. Q. That was at the annual meeting? A. Annual meeting in 1874. Q. Was Gen. Kane present at that time? A. He was, sir. Q. State anything further that transpired at that meeting in relation to Gen. Kane, agent of the company? A. Gen. Kane was called upon by Mr. Fraley, and got up and made a verbal statement as to the condition of the affairs of the property of the McKean and Elk Land and Improvement Co. Q. Can you tell what month this was in 1874? A. I think in February or March; I think it was February. Q. Where was the meeting held? A. It was held in the old Navigation rooms, or rather the Franklin Institute, on Seventh street between Market and Chestnut, on the east side.'

" Whether this evidence is sufficient to prove the existence of Kane's agency it is not necessary for us to determine. We are of the opinion that, even if his agency was established by competent proof, the plaintiff is not entitled to recover. Kane, being the agent of the company, could not, as long as this fiduciary relation existed, purchase at a judicial or tax sale the lands of the company, and set up the title thus acquired in antagonism to that of his principal. Such a purchase would raise a constructive trust, and he would be seized of the legal title in trust for his constituents. But the title thus acquired would not be absolutely void, but voidable at the option of the com-

pany, and the trust could have been enforced against him and
those claiming under him with notice, either in a court of
equity to obtain a decree setting aside the sales, or compel a re-
conveyance of the lands, or by recovery of possession in an ac-
tion of ejectment.

"'Courts of justice exact the most scrupulous good faith
from agents of every description during the continuance of the
agency.  To prevent fraud, they cannot purchase the estate
of their principals for their own benefit, but in trust.  If the
principal ratifies the purchase, with a full knowledge of all the
circumstances, it validates it, for the sale is not void, but void-
able;' Myers' Ap., 2 Pa. 466.  The purchase by Kane creating
a trust, arising by legal implication from his duty as agent, is
within the operation of § 6 of the act of April 22, 1856, and
would bar the plaintiff's right to recover the lands.  This sec-
tion provides, that ' no right of entry shall accrue, or actions
be maintained for a specific performance of any contract for
the sale of any real estate, or for any damages for non-compli-
ance with any such contract, or to enforce any equity of re-
demption, after re-entry made for any condition broken, or to
enforce any implied or resulting trust as to realty, but within
five years after such contract was made, or such equity or trust
accrued, with the right of entry, unless such contract shall give
a longer time for its performance, or there has been, in part, a
substantial performance, or such contract, equity of redemption,
or trust, shall have been acknowledged by writing to subsist,
by the party to be charged therewith, within the same period:
Provided, that, as to anyone affected with a trust by reason
of his fraud, the said limitation shall begin to run only from
the discovery thereof, or when, by reasonable diligence, the
party defrauded might have discovered the same ; but no bona
fide purchaser from him shall be affected thereby, or deprived
of the protection of the said limitation : And provided, that
any person, who would be sooner barred by this section, shall
not be thereby barred for two years from the date hereof.'

"'The act of 1856 applies to a constructive trust, arising
from a purchase by an attorney under his client's judgment:'
Barrett v. Bamber, 81 Pa. 247.

"But, independent of the act of 1856, the acquiescence of
the plaintiff, and its laches in instituting proceedings to set
aside the sale, are fatal to its right to recover.

" It was well known to the stockholders and directors of the company that the lands of the company had been purchased at sheriff's sale and treasurer's sale by Thomas L. Kane, as appears by the report of the board of directors to the stockholders, made on Feb. 9, 1875. If Kane held the relation of agent to the company at the time of the sheriff's and treasurer's sales, the title he acquired was voidable at the option of the company, and it was its duty, within a reasonable time, to make its election to have the sale set aside, otherwise it would be precluded from asserting its right to repudiate the sale. An unreasonable delay, unexplained in instituting proceedings to avoid the sale, will imply an election to treat the sale as valid, and a confirmation may be justly inferred after a considerable lapse of time. Thirteen years elapsed after these sales to Kane before any proceedings were commenced to have them invalidated; and in the meantime the taxes and other expenses, incidental to the ownership of the lands, had to be paid by the defendants. This is such an acquiescence on part of the corporation, and a confirmation of the sale to Gen. Kane, as would preclude an enforcement of the trust.

" ' In all cases in which an attempt is made to fasten a constructive trust upon a purchaser the attempt must fail, unless made in a reasonable time. Acquiescence is presumed from delay. Lapse of time, indeed, is no bar to the assertion of a direct trust, but not so when the trust is constructive. If a trustee to sell becomes the purchaser his purchase is generally voidable, but the cestui que trust must move to avoid it within a reasonable time : ' Campbell v. Walker, 5 Ves. 678 ; Hawley v. Cramer, 4 Cowen, 718 ; Prevost v. Gratz, 1 Peter's C. C. R. 368 ; Clegg v. Edmondson, 3 Jur. N. S. 299.

" This last case is instructive in many particulars. In Beckford et al. v. Wade, 17 Ves. 87, Sir William Grant said : ' It is certainly true that no time bars a direct trust as between cestui que trust and trustee ; but if it is meant to be asserted that a court of equity allows a man to make out a constructive trust at any distance of time after the facts and circumstances happened out of which it arises, I am not aware that there is any ground for a doctrine so fatal to the security of property as that would be ; so far from it, that not only in circumstances where the length of time would render it extremely difficult to ascer-

tain the true state of facts, but where the true state of facts is
easily ascertained, and where it is perfectly clear that relief
would originally have been given upon the ground of construct-
ive trust, it is refused to the party who, after long acquiescence,
comes into court to seek that relief. In proof of this it is not
necessary to produce any other case than that of Bonney v.
Ridgard (cited in 4 Brown's Ch. Cas. 138), in which Lord
KENYON, when master of the rolls, on the sole ground of length
of time, reversed a decree by which Sir Thomas Sewell had
granted relief against a fraudulent purchase, and had declared
the purchaser to be a trustee for the plaintiffs in the cause,
Lord KENYON, agreeing perfectly that the purchase was origi-
nally fraudulent, and that the defendant must have been held to
be a trustee if the suit had been brought in proper time : '
Ashhurst's Ap., 60 Pa. 315, 316.

" ' Unreasonable delay in taking steps to have set aside a sale
by a trustee to himself will imply an election to treat the sale
as valid, and a confirmation of it may be justly inferred after
the lapse of eight or ten years : ' Scott et al. v. Freeland, (7
Smedes and Marshall, 409,) 45 Am. Dec. 310.

" ' Purchase by trustees of property of cestui que trust,
whether made at public or private sale, is voidable only. The
cestui que trust must make his election to set aside such
purchase within a reasonable time : ' Harrison v. McHenry,
(9 Georgia, 164,) 52 Am. Dec. 435.

" ' It is observed that the law will not permit one to buy an
estate which he was intrusted to sell in such manner as to make
any profit or benefit to himself. It is not strictly true that the
trustee may not purchase ; in other words, the purchase is not
merely void. If the cestui que trust should acquiesce in the
sale he would be bound ; but if he dissents in a reasonable time,
the trustee will be considered as holding for the benefit of the
cestui que trust. . . . And the objection of a long acquies-
cence will be entitled to much consideration, and perhaps will
be a sufficient answer. Upon this point the court would ob-
serve that there is no precise rule as to what length of time, or
what other fact or circumstance shall be considered sufficient
proof of acquiescence. Lord THURLOW, 2 Bro. C. C. 426,
seemed to think three years a long acquiescence. ' When,' he in-
quires, ' would such a transaction as this end, if not in three

years?' In that case, Fox v. Mackreth, the defendant was held
to account for the difference between the purchase and the resale,
but it was a case strongly marked with gross fraud. In Which-
cote v. Lawrence, 3 Ves. 752, the court thought that an ac-
quiescence of six years by a large number of creditors ought
not to bar. But in the case now under consideration, the
plaintiffs did not bring their suit until nine years after the de-
fendant enforced his purchase by a recovery against one of the
plaintiffs, without any objection on her part; and the purchase
was made eleven years before the plaintiff's bill was brought.
We are strongly inclined to think that such an acquiescence,
under such circumstances, would be a sufficient answer:' Jenni-
son v. Hapgood, (7 Pickering, 1,) 19 Am. Dec. 260.

"In addition, to entitle the plaintiff to a verdict, a tender
should have been made to defendants of the amount of money
that has been expended by them, or, at least, it should have
been paid into court on the trial.

"'It is to be observed that the purchase of an agent is not
void in itself, but only voidable at the option of the principal,
and the latter, if he elects to set it aside, must refund the
money that was paid:' Black on Tax Titles, § 145; Ellsworth
v. Cordrey, 63 Iowa, 675; Connecticut Mutual Life Ins. Co. v.
Bulte, 45 Michigan, 113.

"'In ejectment against one affected with a constructive trust,
it is sufficient to bring into court on the trial the amount ex-
pended by the defendant:' Henry v. Raiman, 25 Pa. 354.

"Equity considers the purchase of one in a confidential rela-
tion as bona fide, and for the benefit of his associates; but he
is entitled to be reimbursed before he can be compelled to con-
vey, unless he acted fraudulently.

"'And, in the absence of evidence of dishonesty, he must
be presumed to have acted honestly:' Duff v. Wilson, 72 Pa.
442-448.

"A thorough examination of the minutes of the company
has impressed us with the conviction that the institution of
this suit is an effort on the part of certain dissatisfied stock-
holders of the company, who refused when called upon to ad-
vance any money to meet the indebtedness and pay the taxes
of the company, to wrest its property from those who did ad-
vance the money to save it for themselves and their associates.

"The verdict for defendant was properly directed."

*Errors assigned* were holding (1) that the testimony of Bickel contained the only evidence of Kane's agency after Feb. 5, 1869; (2) that the purchase by Kane created a trust within the act of April 22, 1856, § 6; (3) that the laches of plaintiff barred its recovery; (4) that the amount expended by defendants should have been tendered them or the money paid into court on the trial; (5)   directing a verdict for defendants.

*Rufus B. Stone* and *George A. Jenks*, with them *George A. Sturgeon*, for appellant.

*E. Hunn Hanson* and *John G. Johnson*, with them *C. H. Mc-Cauley, M. F. Elliott, Byron D. Hamlin* and *George A. Rathbun*, for appellees.

PER CURIAM, May 23, 1892:

This case, although elaborately argued, both in the paper books and at bar, does not require an extended discussion. The appellant contends that the purchases of the real estate by General Kane, at the tax and sheriff's sales, in 1874, were void, for the reason that, at the time, he was agent of the plaintiff corporation, and that his purchases, because of the agency, were fraudulent, and therefore void.

The answer to this on the part of the defendants was, that the evidence did not show him to be such agent; that had he been an agent, intending to commit a fraudulent breach of duty, by purchasing in a way hostile to his principal, the intended fraud would, by operation of law, not be allowed to prevail, but he would have been turned into a trustee for his employer; in other words, a trustee ex maleficio.

The evidence that General Kane, at the time of the purchases referred to, was the agent of the corporation, is so slight that it hardly amounts to a scintilla. On the contrary, the evidence is overwhelming that at that time his agency had ceased.

If we concede, however, that the agency still existed, and that the purchases by Kane created a trust, arising by legal implication from his duty as agent, it comes clearly within the operation of the sixth section of the act of April 22, 1856, and would bar the plaintiff's right to recover the land. The case is so fully discussed by the learned judge of the court below in

his opinion refusing a new trial, that we do not think it necessary to elaborate it. A careful examination of the record does not disclose error.

Judgment affirmed.