## Taylor *v.* Taylor, Appellant.

*Ejectment—Tax title—Title against title—Evidence.*

1. In an action of ejectment in which a tax title is arrayed against a tax title, the plaintiff must stand upon the strength of his own title and not upon the weakness of that of his adversary.

2. Where a tract of unseated lands is sold for taxes and bought in by the county commissioners, and later on the same day a portion of the same tract separately assessed, and thus doubly assessed, is sold for taxes and bought in by the county commissioners, and thereafter the county commissioners sell the tract described in the deed following the first sale to one purchaser, and the tract described in the deed following the second sale to another purchaser, the purchaser of the first or larger tract takes title to the smaller tract included therein as against the second purchaser.

3. In such a case the purchaser of the first sale takes a complete title, so that there is nothing to pass at the second sale.

4. A sale of unseated land for taxes divests the liens of all taxes prior to the year in which the sale is made, and a subsequent sale under taxes for a year prior to the year of sale but subsequent to the year of the lien under which the original sale was made passes no title.

Argued May 2, 1910. Appeal, No. 191, Jan. T., 1909, by defendant, from judgment of C. P. McKean Co., Dec. T., 1906, No. 140, on verdict for plaintiff in case of James Taylor v. Welthia A. Taylor. Before FELL, C. J., BROWN, POTTER, ELKIN and STEWART, JJ. Affirmed.

Ejectment for land in Annin township. Before LINDSEY, P. J., specially presiding.

The facts are stated in the opinion of the Supreme Court.

The court charged in part as follows:

The question which we have here, as we understand it, is which obtained the better title? And we are of opinion that if the treasurer's sale for the 238 acres to the commissioners of McKean county was first in time on that date, namely, September 23, 1890, no matter how short the time it preceded the title to the commissioners to the 112 acres, and your verdict must be for the plaintiff for the premises described in the writ.

If you find that the sale of the 238 acres was made first before the sale of the 112 acres, no matter how short a time, the plaintiff would get the better title. When the sale of the 238 acres was made on September 23, 1890, based on the taxes of 1888, as soon as it was made the purchaser would take what is termed an inchoate title, which ripened into a perfect title at the end of the time allowed by law for redemption. And I call your attention here to the fact that the deed from S. S. Bullis to the defendant described the defendant's 126 acres fully, and has been identified here on the map, and thus this sale that was made of the 238 acres did not vest any title in the 126 acres, but did carry the title—passed the title to the balance of the land or the 112 acres of land.

The taxes were paid on the 126 acres of land and that was defined by the deed, easily defined, so that the balance on which the taxes were not paid could be easily ascertained, and has been identified as the 112 acres in the north part or north of that diagonal line pointed out on the map.

Now, if you believe that the sale of this piece of land preceded in time the sale of the 112 acres to the commissioners, which was conveyed by the commissioners, and by sundry deeds, vested in the defendant, no matter how short that time might be, if it was sold first, the plaintiff in our opinion, and we so instruct you, would obtain the better title, and would be entitled to recover.

Now, as to that there is no dispute as to the evidence. The deputy treasurer who attended to the sales at that

time, testified that it was first on the list, and they commenced at the head of the list and followed the order; that the pieces were put on the sales list, and that the 238 acres were sold first before the 112 acres. And if you believe this evidence your verdict should be for the plaintiff in this case. There is no dispute as to that testimony, and unless there is some reason why you should not believe the deputy treasurer in this case, why then, your verdict should be for the plaintiff, and after we have answered the points in the case we will leave this question to you, the only question which you have to decide.

Verdict and judgment for plaintiff. Defendant appealed.

*Error assigned* among others was portion of charge as above, quoting it.

*G. B. Mayo*, with him *E. R. Mayo*, for appellant, cited: McCloskey v. Kunes, 142 Pa. 241; Morton v. Harris, 9 Watts, 319; Woodburn v. Wireman, 27 Pa. 18; Caul v. Spring, 2 Watts, 390; Keen v. Sheehan, 154 Mass. 208 (28 N. E. Repr. 150); Lane v. Reynard, 2 S. & R. 65; Chew v. Barnet, 11 S. & R. 389; Fisher v. Philadelphia, 75 Pa. 392; Bonaffon v. Peters, 134 Pa. 180; Hetherington v. Clark, 30 Pa. 393; Ebner v. Goundie, 5 W. & S. 49; Lightner v. Mooney, 10 Watts, 407.

*F. D. Gallup*, for appellee, cited: Kunes v. McCloskey, 115 Pa. 461; Shumway v. Phillips, 22 Pa. 151; Robinson v. Williams, 6 Watts, 281; Phila. v. Raup, 177 Pa. 396; Irwin v. Trego, 22 Pa. 368; Clapp v. Pinegrove Twp., 138 Pa. 35; Goodman v. Sanger, 91 Pa. 71.

OPINION BY MR. JUSTICE ELKIN, May 24, 1910:

This is an action of ejectment in which a tax title is arrayed against a tax title. It is argued for appellant that plaintiff must stand upon the strength of his own title and not upon the weakness of that of his adversary,

which of course is the law, and that he cannot recover in this action because of failure to meet this burden. There is no difficulty about the rule, and the question involved in the court below and here is whether the plaintiff was entitled to recover upon the strength of his own title. If the plaintiff did not have a valid title he cannot recover possession of the land in controversy no matter whether the defendant had a perfect title or not. The question to be determined is whether the plaintiff had a good title. He claims through a tax title which if good entitles him to the possession. A brief recital of the facts is necessary in order to understand the nature of the controversy. For the year 1888, the assessor of Annin township returned on the unseated list 238 acres of land as in warrant 3,450 in the name of George Helwig, and also returned on the same unseated list 126 acres in the name of appellant here. The taxes on the 238 acres not being paid were returned and became a lien upon the land. For the year 1889, the assessor in the same township returned on the unseated list 112 acres in warrant 3,450 in the name of George D. Helwig and 126 acres in different warrants in the name of appellant. The taxes were not paid on the lands assessed in the name of appellant for the year 1889, and were returned and became a lien upon the property. At an adjourned sale on September 23, 1890, the county treasurer sold the 238 acre tract to the county commissioners upon the assessment and for the taxes of 1888. On the same day, but after the sale of the 238 acre tract had been made, the 112 acre tract was sold to the county commissioners upon the assessment and for the taxes of 1889. The county held the titles thus acquired until August 20, 1895, when the commissioners sold the 238 acre tract to one purchaser and the 112 acre tract to another, and duly signed and delivered deeds for the same. The plaintiff claims the land in dispute by purchase from those who acquired the tax title to the 238 acre tract while the defendant claims by purchase of the tax title for the 112 acre tract

sold for the taxes of 1889. The evidence shows that the 112 acre tract was a part of the 238 acre tract, both being included in warrant 3,450. Upon the conceded facts it is clear there was a double assessment to the extent at least of the land involved in this controversy. The question then arises under this state of facts which title purchased at the tax sale has the priority. Both tracts were sold on the same day. Only one question was submitted to the jury by the learned court below and that was, Which sale was first made? The jury found from the evidence that the first sale was of the 238 acre tract for the taxes of 1888, and that the sale of the 112 acre tract for the taxes of 1889 was subsequently made. With this fact ascertained the learned court below held as a matter of law that the sale which was first made in point of time gave precedence and priority of title. We think this is the correct rule and that it has been so decided in our own cases: Kunes v. McCloskey, 115 Pa. 461, and Mc-Closkey v. Kunes, 142 Pa. 241. These cases hold that the purchaser of land at a treasurer's tax sale has an inchoate title the moment the property is knocked down to him which becomes perfect with the payment of the purchase money. His rights are fixed by the sale, and the subsequent payment of the purchase money and the delivery of the deed relate back to it. These cases announce no new rule in this respect but followed the authority of earlier cases. It is sound and we see no reason to disturb it. Let us now apply that rule to the facts of the present case. Here was an assessment for the year 1888, on 238 acres of unseated land and in the year 1889, on 112 acres, which it is admitted were included in the larger tract. It was of course a double assessment to the extent of the interference, but the taxes were regularly assessed and the sales were made in accordance with the requirements of the statute so that the regularity of the assessment as well as of the sale cannot be questioned. When the taxes were returned they became liens on the lands against which the taxes were levied, which liens attach to and are

coextensive with the land assessed. When the sale of the
land for the taxes of 1888 was made in 1890, the liens of
all taxes prior to the year in which the sale was made
were divested: Irwin v. Trego, 22 Pa. 368. The land, by
whatever name assessed and sold, was debtor for the
taxes imposed, and the sale in satisfaction of the assess-
ment conveys a good title to the purchaser: Miller v.
Hale, 26 Pa. 432. What passes under the sale depends
upon what was bound by the lien. The extent of the
lien in tax cases must depend upon the assessment, and
all the land included in the assessment passes with the
tax sale: Brundred v. Egbert, 164 Pa. 615. There can be
no doubt that the 238 acre tract in the assessment for
1888 was liable for the payment of the taxes imposed,
and it is equally clear that when this tract was sold for
the payment of those taxes in 1890, the purchaser at that
tax sale took title to all the land bound by the assess-
ment. The learned counsel for appellant contends for
the rule that has been held to apply in some cases where
there has been a double assessment by reason of older
and younger warrants overlapping. The rule of these
cases has no application to the case at bar because no
question of title depending upon the date of warrants or
upon older or younger surveys is raised. In the present
case both tracts were included in the same warrant and
so far as the chain of title is involved both claim from a
common source. When the property was knocked down
to the county commissioners at the sale in 1890 for the
taxes of 1888, the lien of the taxes for 1889 was divested
and the purchaser at that very moment acquired an in-
choate title with the tax liens for the years 1888 and 1889
divested. It follows as of course that when the county
treasurer offered the same land for sale for the taxes of
1889, there was no valid lien upon which to base a sale,
and the purchaser under these circumstances did not
take a good title. The county commissioners who pur-
chased at the first sale took the title to the 238 acre tract,
and that is the title upon which plaintiff stands. We

think that title is good and agree with the conclusion reached by the learned court below.

Judgment affirmed.