Thomas E. PROCTOR, 2nd, John Riker Proctor, Esther B. Proctor, Mary P. Case, Emma M. Rice, Geraldine M. Craig, Neil W. Rice, Hilda R. Ayer, Thomas E. P. Rice; and Thomas W. Reynolds, David Broude and Boston Safe Deposit and Trust Company, Trustees Under the Last Will and Testament of Thomas E. Proctor, Deceased, Appellants,

v.

SAGAMORE BIG GAME CLUB, The Sylvania Corporation, United Natural Gas Company, National Fuel Gas Company, Frank G. Altman, H. P. Boarts, F. E. Carroll, W. L. Carroll, A. J. Eisenhuth, H. U. Flickinger, John W. Flickinger, Bertha E. Jones Shearer, John Rummel, A. C. Thomas, William Walker, D. D. Flickinger, Antonia Johnson, Clyde K. Moore, George C. Schrecongost, R. L. Seger, L. E. Thomas and E. C. Wareham.

No. 12715.

United States Court of Appeals Third Circuit.

Argued Feb. 3, 1959.

Decided March 24, 1959.

Rehearing Denied April 27, 1959.

See also 20 F.R.D. 171.

Herbert R. Carroll, Pittsburgh, Pa. (John C. Youngman, Williamsport, Pa., John H. Cartwright, Ridgway, Pa., Evans, Ivory & Evans, James C. Evans, Pittsburgh, Pa., on the brief), for appellants.

J. Villard Frampton, Oil City, Pa. (H. P. Boarts, Kittanning, Pa., W. Pitt Gifford, Gifford, Graham, MacDonald & Illig, Erie, Pa., Frampton & Courtney, Oil City, Pa., on the brief), for defendants, appellees.

Before GOODRICH and STALEY, Circuit Judges, and STEEL, District Judge.

STEEL, District Judge.

This is an appeal from a summary judgment for defendants.

At stake is the ownership and right to possession of natural gas underlying unseated lands[1] known as Warrant 5343 in Elk County, Pennsylvania. A discovery well completed in April 1953 and seven subsequent wells, the last of which was completed in September 1954, dem-

onstrated that these lands had substantial value because of the existence of subsurface natural gas in commercial quantities. The present action followed.

Plaintiffs claim to be either the legal or equitable owners of the natural gas underlying and produced and sold from the lands. Defendants are rival claimants who are alleged to be trespassers. They comprise persons and corporations claiming ownership of the warrant with royalty rights in the gas, a lessee-producer, and a purchaser of the gas. Plaintiffs seek possessory, monetary and injunctive relief, and an adjudication that defendants hold the gas as trustees for plaintiffs. Plaintiffs made timely demand for a trial by jury.[2]

All parties have properly relied upon Pennsylvania law as dispositive of their rights, since the sole basis of jurisdiction of the District Court was diversity of citizenship.

In determining whether summary judgment for defendants was properly granted, we must accept as true all facts and inferences therefrom which tend to support plaintiffs' claim regardless of any denial thereof by defendants. It is not our province to resolve disputed questions of fact, but only to determine whether genuine issues of material fact exist. The Court below found, and we think correctly, that if all of the facts and inferences therefrom relied upon by plaintiffs were accepted as true, defendants were entitled to judgment as a matter of law.

Preliminarily, it is desirable to say a word about the record upon which our decision will be based. Many of plaintiffs' arguments pertaining to its equitable interest in the gas rest upon unsworn statements by plaintiffs' attorneys as to the contents of documents

---

1. When lands fail to disclose improvements indicating a personal responsibility of the owner for the taxes, the assessor must return the lands as unseated. Hutchinson v. Kline, 1901, 199 Pa. 564, 49 A. 312, 313; Whitworth, Tax Sale and Titles and the Evidence of the Same in Pennsylvania, Chapter IV, page 52, § 29 (1900).

2. It is assumed that the action is appropriate to be tried to a jury, although we have given no consideration to this question.

and the existence of facts detailed in Plaintiffs' Statement of Position and Plaintiffs' Reply to Defendants' Statement of Position. These were filed for use at a pre-trial conference at a time when a trial was in contemplation. These self-serving unverified statements of fact asserted by plaintiffs are not the type of proof which F.R.Civ.P. Rule 56 (c), 28 U.S.C. requires for the resolution of a motion for summary judgment. Nor are the unsworn statements concerning the contents of documents adequate under Rule 56(e). Nevertheless, it appears from the position of the defendants at pre-trial, the decision of the Court below, and the brief of the defendants in this Court, that the defendants, both in this Court and in the District Court, were willing to accept as true for the purpose of testing defendants' motion for summary judgment all of the factual statements contained in plaintiffs' statements of position.[3] Accordingly, we shall likewise do so.

■ An itemization of each link in the chain of title through which the parties claim is not necessary. It is enough to say that plaintiffs base their title upon that of their deceased ancestor, Thomas E. Proctor, Sr., to whose rights, if any, they have succeeded. The title and other interests claimed by defendants derive through one G. W. Childs who purported to purchase Warrant 5343 at a tax sale in 1894 immediately prior to which Proctor was the owner.

■ To prevail, plaintiffs must first establish that Proctor's title, either legal or equitable, survived the tax sale. A plaintiff seeking to recover the possession of an estate in land must do so upon the strength of his own title, not upon the imperfections in the title of a defendant. Taylor v. Taylor, 1910, 228 Pa. 424, 77 A. 663; Zeller v. American International Corp., 1921, 271 Pa. 472, 114 A. 778; Henry v. Grove, 1947, 356 Pa. 541, 52 A.2d 451. Subsurface gas in place is an estate in land. F. H. Rockwell & Co. v. Warren County, 1910, 228 Pa. 430, 77 A. 665.

### I

On June 5, 1893 Proctor acquired title to Warrant 5343 from Bigler, et al. At the time the taxes for 1892 and 1893 had been assessed against the warrant as unseated lands, were unpaid, and constituted a lien upon the warrant. On June 11, 1894 the treasurer of Elk County sold the warrant for the 1892 taxes. G. W. Childs was the purchaser and he received a deed from the treasurer dated June 11, 1894.

■ The tax sale and the treasurer's deed, if valid, conferred upon Childs a fee simple title. Act of April 3, 1804, P.L. 517, 4 Sm.L. 201, § 2; White v. First National Bank of Emporium, D.C. M.D.Pa.1938, 24 F.Supp. 290, 293. This included not only the surface of the land but subsurface natural gas as well. See Powell v. Lantzy, 1896, 173 Pa. 543, 34 A. 450.[4] On June 28, 1898 Childs as-

---

**3.** The idea of testing plaintiffs' case by a motion for summary judgment was advanced at a pre-trial conference at which Plaintiffs' Statement of Position and Plaintiffs' Reply to Defendants' Statement of Position were discussed. Both parties expressed the view that the filing of such a motion would be desirable and defendants indicated they would be willing to have their motion tested by conceding the truth of the "extraneous matters" which plaintiffs had adduced at the conference. Transcript Pre-trial, September 23, 1959 (Doc. 75), pp. 9, 18, 36, 39, 41–42.

The opinion of the District Court discussed many of the unverified facts relied upon by plaintiffs. So did defendants in their brief in this Court. Defendants made no objection to the statements except on the grounds of relevancy.

Some of the statements made by plaintiffs constituted legal conclusions. These conclusions were not admitted by defendants. Nor will they be accepted as true by us except as such conclusions are warranted by the factual statements and applicable legal principles.

**4.** If there had been a severance of the title of the gas from the title of the surface prior to the assessments for 1892 and 1893, and if each of the several interests had been separately assessed, a tax sale would have carried with it the title only to the particular estate as to which taxes were in default. F. H. Rockwell & Co. v.

signed his tax deed to Elk Tanning Company. The claim of defendants rests upon the tax sale to Childs, the assignment of the tax deed to Elk Tanning Company, and subsequent conveyances and leases.

On October 1, 1894, three months after the tax sale, Proctor purported to convey the same warrant to Elk Tanning Company by a deed which reserved to himself and to his heirs and assigns, all of the natural gas in, upon or under the lands. Plaintiffs base their claim to the natural gas on the title which Proctor acquired from Bigler and on the reservation in Proctor's deed to Elk Tanning Company, even though the latter deed was not executed until three months after the delivery of the tax deed to Childs. Plaintiffs argue that the gas reservation in the Proctor deed was valid because the prior tax deed to Childs was invalid and hence Proctor's title was not divested thereby. The invalidity of the tax deed, plaintiffs say, was due to the failure of the treasurer to acknowledge the tax deed in open court as was required by Section 2 of the Act of April 3, 1804, P.L. 517, 4 Sm.L. 201. This omission is established, plaintiffs assert, by the failure of the "Trial List and Court Minutes" of the Court of Common Pleas of Elk County to make any reference to the acknowledgement. But the silence of the minutes in this regard does not invalidate the sale if in fact the tax deed was acknowledged in open court. The Act of May 5, 1941, P.L. 38, § 1, 21 P.S. § 283 was enacted to make tax titles secure against just such an argument as plaintiffs make.[5]

The evidence is uncontroverted that the acknowledgement did in fact take place in open court on July 3, 1894. The certificate of the Prothonotary endorsed on the deed says so, and it is *prima facie* evidence of that fact. Act of May 11, 1911, P.L. 257, § 1, 21 P.S. § 48. An entry in the book entitled "Acknowledgement of Treasurer's Deeds" kept in the Office of the Prothonotary in Elk County likewise attests the open court acknowledgement on July 3, 1894. The "Trial List and Court Minutes" reveal that the Court of Common Pleas of Elk County sat on July 3, 1894. Plaintiffs' contention that the tax deed was invalid because it was not acknowledged in open court is untenable.

It is of no moment that Proctor, in his deed to Elk Tanning Company, reserved the natural gas to himself and to his heirs and assigns. If the tax sale to Childs cut off all of Proctor's legal title to the warrant, including his title to the

---

Warren County, supra. But there had been no such prior severance.

5. 21 P.S. § 283 provides:

"Whenever heretofore any land has been sold by the county treasurer of any county for the purpose of securing the payment of delinquent taxes which were assessed and levied against such land, and the county treasurer in pursuance of such sale executed a deed for said lands, and the acknowledgment of such deed by the county treasurer was defective in any respect, or where the records of the court failed to show a minute of such acknowledgment in open court, such sale and such deed shall not be invalidated by reason of such defective acknowledgment, if, in all other respects, the laws relating to the holding of such sale were fully complied with and the deed was, in fact, acknowledged before a judge of said county; and all such treasurers' sales and treasurers' deeds are hereby ratified, confirmed and validated; and the title to any such land purchased by any person or by the county commissioners of any county at such treasurers' sale and the deed executed and acknowledged to such purchaser is hereby declared to be as valid as if such deed had been acknowledged in open court and a proper minute thereof made in full conformity with the law relating thereto. 1941, May 5, P.L. 38, § 1."

Plaintiffs' argument that the "Trial List and Court Minutes" are irrebuttable proof that the treasurer's deed was not acknowledged in open court is based upon decisions which antedate the enactment of 21 P.S. § 283. Defendants take exception to the interpretation which the plaintiffs have placed on the decisions. In view of the statute this interpretive controversy need not be resolved.

natural gas, subject only to his right of redemption under Pennsylvania law [6] —as we hold that it did—then when Proctor gave his deed to Elk Tanning Company, he had no legal title in the surface to convey to Elk Tanning Company or in the natural gas to reserve to himself. The reservation could not revive in Proctor the legal title which he had lost by the earlier tax sale.

## II

Plaintiffs next contend that even if the treasurer's acknowledgement of the tax deed to Childs was valid and Childs purchased a good legal title thereby, nevertheless Proctor retained an equitable interest in the gas. Plaintiffs say that they "proposed to prove facts" showing an agreement between Proctor and Elk Tanning Company under which the latter assumed to clear Proctor's title to Warrant 5343 of all debts and encumbrances through 1892 and that it did so either by way of payment of the tax or redemption of the warrant from the sale; or alternatively, that Elk Tanning Company failed to carry out its commitment as a result of which the warrant was acquired by it by fraud. The effect of the summary judgment, plaintiffs say, is to deprive them of their right to present to the jury for its determination the issues of payment, redemption and fraud.[7]

■ The difficulty with this argument is that there are no facts before us from which the existence of an agreement between Proctor and Elk Tanning Company such as plaintiffs postulate can be found either directly or by implication.[8] Plain-

tiffs' proposal to prove the agreement at the trial is not enough to defeat the summary judgment motion. The liberality of our treatment of the facts included in plaintiffs' statements of their position cannot be stretched to the point where we accept as true what plaintiffs characterize as "the well-founded supposition" that at one time such an agreement existed; particularly as defendants have refused to concede the existence of such an agreement. A party who desires to resist a motion for summary judgment cannot hold back his evidence until trial, but must bring it before the Court when the motion is heard so that it may then be judicially evaluated. Engl v. Aetna Life Ins. Co., 2 Cir., 1943, 139 F.2d 469, 473; 6 Moore Federal Practice, ¶ 56.11 (2d Ed.).

■ But wholly apart from any agreement between Proctor and Elk Tanning Company such as plaintiffs hypothesize, it is at least inferable that the tax sale purchase was simply a means whereby Elk Tanning Company, acting through its president Childs, acquired title to Warrant 5343 in furtherance of a written agreement dated January 25, 1893 between Proctor and other tannery owners, including Childs, to consolidate their businesses and bark lands in United States Leather Company; and that the consolidation was effected by Proctor and the other tanners by conveying their properties, including Warrant 5343, to wholly owned subsidiaries of United States Leather Company, including Elk Tanning Company, in consideration for stock of the latter company.[9] The agree-

---

6. In a request by defendants that plaintiffs admit certain facts, plaintiffs said in part:
   "The plaintiffs admit that if a redemption was necessary to avoid said alleged tax sale, no such redemption was made."

7. Statements in the record indicate a concession by plaintiffs that Proctor did not pay the taxes on the warrant. Other parts of the record, however, make it clear that the concession related only to a direct payment by Proctor, and that plaintiffs reserved the right to contend that the tax sale and its ramifications

were equivalent in law to a payment of the tax on Proctor's behalf. Pre-trial Transcript (Doc. 75) pp. 23–26.
   Plaintiffs have admitted that the warrant was not redeemed (see f.n. 6), without any reservation comparable to that pertaining to the issue of payment.

8. If in fact such an agreement did exist, other impediments to plaintiffs' recovery immediately suggest themselves, but a discussion of them would be superfluous.

9. While Warrant 5343 was not owned by Proctor when the January 25, 1893 contract was entered into, it is not unlike-

ment of January 25, 1893 expressly provided that when the bark lands were conveyed, the oil, gas and minerals should be reserved to the grantors. Other evidence tends to confirm this intention. It can be inferred, therefore, that when Childs acquired the tax deed for Elk Tanning Company, the latter acquired title to a larger estate than was intended because of a mutual mistake of law as to the effect of the transaction. If this were so, Elk Tanning Company was unjustly enriched and a constructive trust in the natural gas arose in which Proctor and his successors in interest were the beneficial or equitable owners. Restatement, Restitution §§ 48, 50, 160 (Comment a.), 163; 3 Scott on Trusts §§ 462.5, 465, 466. Pennsylvania has recognized the latitudinous principle that a constructive trust may arise against one who has been unjustly enriched even though he has been guilty of no act of wrongdoing. Dubin Paper Co. v. Insurance Co. of North America, 1949, 361 Pa. 68, 63 A.2d 85, 94, 8 A.L.R.2d 1393.

■■■■ But even assuming that a constructive trust did arise in Proctor's favor following the tax sale, still plaintiffs are barred from maintaining the action. Plaintiffs' asserted rights came into being in 1894, more than 60 years before the present suit was begun. The District Court held that the action was barred by the Third Section of the Act of April 3, 1804, P.L. 517, 4 Sm.L. 201.[10] Whether this statute has application to the type of claim here involved need not be determined. For the five-year period of limitation imposed by the Act of April 22, 1856, P.L. 532, § 6, 12 P.S. § 83 was

intended to protect landholders from just such an equitable claim as is here asserted.[11] It is a statute of repose which was intended to insure greater certainty of title and make more secure the enjoyment of real estate against a claim based upon an "implied trust". Ross v. Suburban Counties Realty Corporation, 1947, 356 Pa. 126, 51 A.2d 700, 701. The term "implied trust" in 12 P.S. § 83 includes a constructive trust. McKean & Elk Land & Imp. Co. v. Clay, 1892, 149 Pa. 277, 24 A. 211; Johnson v. Hobensack, 1935, 318 Pa. 305, 178 A. 40; Gast v. Engel, 1952, 369 Pa. 137, 85 A.2d 403.

Once a constructive trust has arisen, even the ignorance of the beneficiary of his rights will not toll the period of limitation fixed by 12 P.S. § 83 unless the trust was the result of a fraud. The statute says as much.

■■■■ Fraud can be proven only by evidence which is clear, explicit and unequivocal. See, e. g., Modern Baking Co. v. Orringer, 1921, 271 Pa. 152, 114 A. 264; Martin v. Baird, 1896, 175 Pa. 540, 34 A. 809, 812; Bayout v. Bayout, 1953, 373 Pa. 549, 96 A.2d 876; Wagner v. Somerset County Memorial Park, 1953, 372 Pa. 338, 93 A.2d 440. Not only is the record devoid of proof which meets this high standard, but indeed it is barren of any evidence of fraud in the circumstances attending the tax sale. At most, the evidence points to a *bona fide* mistake as to its legal consequences. In these circumstances the statute of limitations presents an insuperable bar to the action.

The view which we have taken of the matter makes it unnecessary for us to

---

ly that its acquisition was in contemplation.

At the time when the January 25, 1893 contract was entered into Elk Tanning Company had not been organized.

10. This provides:
"* * * [N]o action for recovery of said lands [unseated lands sold at tax sale] shall lie, unless the same be brought within five years after the sale thereof, for taxes as aforesaid * * *"

11. 12 P.S. § 83 provides:
"No right of entry shall accrue, or action be maintained * * * to enforce * * * any implied or resulting trust as to realty, but within five years after such * * * trust accrued * * *: Provided, That as to anyone affected with a trust, by reason of his fraud, the said limitation shall begin to run only from the discovery thereof, or when, by reasonable diligence, the party defrauded might have discovered the same * * *"
(Inapplicable language deleted).

consider other arguments advanced by the parties.

The judgment of the District Court will be affirmed.