**Irving GOSTIN, Plaintiff,**

**v.**

**Jules NELSON et al., Defendants.**

**Civ. A. No. 2123.**

United States District Court
D. Delaware.

Aug. 25, 1965.

Charles K. Keil, Bayard, Brill, Russell & Handelman, Wilmington, Del., David S. Goodzeit, New York City, of counsel, for plaintiff.

Norman N. Aerenson, Aerenson & Balick, Wilmington, Del., Charles W. Gross, Philadelphia, Pa., of counsel, for defendants.

## OPINION

STEEL, District Judge.

The opinion dated December 12, 1962, 213 F.Supp. 164 and the interlocutory summary judgment thereon dated December 18, 1962, discloses that defendant Nelson, in violation of his contract with plaintiff dated December 8, 1955, refused to assign 50% of the stock of Merit Associates, Inc., a Pennsylvania corporation, to Supermarket Consultants, Inc., a New York corporation, in which plaintiff and he, Nelson, each held a 50% stock interest. Plaintiff's present motion for summary judgment is to fix the damages which plaintiff sustained because of defendant's breach of contract.

It may be presumed that there was no market for the stock of Supermarket since plaintiff and Nelson each owned 50% of the stock. There can, therefore, be no basis for determining the difference between the fair market value of plaintiff's stock in that company before and after Nelson's breach—a damage formula which might otherwise have been applicable. In the circumstances it would seem that the plaintiff's damages should be computed by determining the difference between the equity represented by plaintiff's stock in Supermarket without ownership by it of 50% of the stock of Merit Associates and such equity if 50% of the stock of Merit Associates had been assigned to Supermarket in accordance with Nelson's agreement.

Neither party has attempted to deal with the damage point on this precise basis. Nevertheless, as will be shown, both parties have approached the damage question in a way which leads essentially to the same result.

There is no dispute about the fact that after December 8, 1955, the Merit Associates partnership paid out monies to its two partners, Nelson and Hoffman, presumably in equal shares, and that Nelson withheld from the plaintiff the monies he received. This, notwithstanding the fact that one half of Nelson's half interest in the partnership was held in trust for the plaintiff. See opinion of December 12, 1962. It was in recognition of this latter fact that the agreement of December 8, 1955, was entered into. This provided for the creation of Merit Associates, a Pennsylvania corporation, the assignment of the partnership assets to it, the issuance of 50% of its stock to Hoffman, and the issuance of 50% to Supermarket, in which plaintiff and Nelson each held a 50% interest. Had the agreement been carried out, this would have given plaintiff and Nelson each a 25% interest in the partnership assets and Hoffman a 50% interest therein. So, essentially, one-half of the amounts which Nelson received from the partnership after December 8, 1955, represents the amount by which the equity represented by plaintiff's stock in Supermarket was diminished by Nelson's breach.

There is only one real point of difference between the parties. Plaintiff claims his damages are to be measured by one-half of the *gross* amounts received by Nelson, whereas Nelson argues that one-half of the *net* amount he received is the most that plaintiff is entitled to recover. Nelson asserts that both the Merit Associates partnership and corporation had operating expenses which must be deducted from the amounts received by him before plaintiff's claim to 50% thereof can properly be calculated.

It is undisputed that after the December 8, 1955 contract was entered into, Nelson received the following amounts from the partnership: [1]

1. In 1957, not less than $5,000.[2]

---

1. He received nothing from Merit Associates, the corporation, which never functioned.

2. Affidavit of plaintiff filed August 24, 1964, pp. 2–3.

2. In December 1958, $4,000.[3]

3. During 1959, $366.85.[3]

4. During 1960, $313.58.[3]

5. From January 1961 through August 1961, when suit was begun, $95.-31.[3]

The total of the amounts so received by Nelson is $9,775.74. One-half of this is $4,887.87 which was plaintiff's share.

There are several answers to Nelson's argument that both Merit Associates partnership and corporation had operating expenses, which according to Nelson, included but were not limited to legal fees, accounting fees, travel expenses, salaries, rent and taxes and which Nelson claims should be deducted from the amounts which he received, before plaintiff's half interest therein is calculated.

In the first place, Merit Associates, the corporation, never actively engaged in any business, and its only expenses were the initial cost of incorporation and legal fees incident thereto. In the absence of evidence to the contrary, it is to be presumed that these expenses were paid prior to the receipt by Nelson of the monies in question since the corporation was formed in November of 1956. See Finding 4 by the New York Supreme Court in the prior litigation between the present parties on the same issues as are here involved. Furthermore, Nelson never received any monies from the corporation.

So far as the Merit Associates partnership is concerned, there is no indication in the record that Item 1 which Nelson received was subject to legal fees of any kind, and plaintiff's affidavit (p. 3) filed on August 24, 1964, although not entirely clear, contains a contrary intimation.

Items 2 through 5 which Nelson received represented net amounts after the payment of attorneys fees. These monies had been collected from Northern Industrial Chemical Company for the partnership by its attorney, Maurice Stern, who deducted therefrom the fees due him and thereafter remitted to Nelson his share of the balance. Compare Nelson's answers filed April 14, 1964, to interrogatory 2, 8, and 11, filed by plaintiff on June 27, 1963. See also Goodzeit affidavit (p. 4) filed February 12, 1965.

■■ With respect to the other business expenses which Nelson claims should be deducted, Nelson has stated in his answer filed on April 14, 1964, to plaintiff's interrogatory 18 that he doesn't know what they amounted to, where the books are located which disclose them, and that Maurice Stern is the best source of the information. This answer was verified on the 27th of March 1964. Later, on September 1, 1964, Nelson filed an affidavit contra to plaintiff's present motion in which he demanded a jury trial for determining the damages. This was upon the ground that he is in a position to produce William Levy, an accountant for the Merit Associates partnership and corporation, and Maurice Stern, the attorney for both entities, and that he, Nelson, "believes" that both the accountant and the attorney have personal knowledge relating to the expenses incurred by the corporation and partnership. Not being based upon Nelson's personal knowledge but only upon his belief, the affidavit fails to satisfy F.R. Civ.P. 56(e). Moreover, Nelson advances no reason why he could not have taken and filed the depositions of Levy and Stern to establish the expenses, in opposing the present motion. A party who desires to oppose a motion for summary judgment cannot hold back his evidence until trial, but must bring it before the Court when the motion is heard so that it may then be evaluated. Proctor v. Sagamore Big Game Club, 265 F.2d 196, 201 (3rd Cir. 1959).

---

3. Answer filed on April 14, 1964, by Nelson, to paragraph 2 of plaintiff's interrogatories filed on June 27, 1963.

There is no genuine issue as to any material fact relating to the damages which plaintiff sustained, and as a matter of law judgment should be entered in plaintiff's favor in the amount of $4,887.87, plus interest, from the dates when the respective amounts were received by Nelson to the date of trial. I assume that this interest will be at the rate of 6% per annum, unless the parties advise me within five days that some other rate is proper. I suggest that counsel for the parties immediately confer for the purpose of agreeing upon and advising me of the amount of interest to be included in the judgment; any such agreement, however, to be without prejudice to the right of either party to challenge the judgment for any reason other than the arithmetic involved in the interest calculation.