(No. 17809.—Decree affirmed.)
LEONORA OSBORN, Appellee, vs. EMMA REARICK,
Appellant.

*Opinion filed April 20, 1927—Rehearing denied June 8, 1927.*

1. TRUSTS—*written declaration of trust need not be in particular form.* Any informal writing, letter or memorandum written by the party having the power of disposal over property will be sufficient to constitute a declaration of trust provided it makes clear the existence of the trust and states a definite subject and object, and it is not necessary that every element required to constitute the trust be so clearly expressed that nothing is left to inference or implication.

2. SAME—*what necessary to creation of a trust.* It is essential to the creation of a trust that the declaration make reasonably certain its material terms, and these terms must include the subject matter or property embraced within the trust, the beneficiaries in whose behalf the trust is created, the nature and quantity of the interests which they are to have and the manner in which the trust is to be performed.

3. SAME—*when instrument is not sufficient to declare trust.* A note reading, "Pay to the order of Christy C. Rearick an undivided half interest" in certain described property, and signed by the party having legal title to the property, is not sufficient to satisfy the requirements of the Statute of Frauds to manifest and prove the creation of a trust in the property in the absence of any context or of any competent evidence showing the reason for or circumstance of its execution.

4. EVIDENCE—*alteration of an instrument will not be presumed.* Where it is admitted that the signature to an instrument is genuine and there is nothing on its face to create any suspicion of alteration after its execution it is admissible in evidence, and there is no presumption that it has been altered since its execution but the party seeking to avoid the instrument must prove that it was altered after it was signed.

5. SAME—*when signer is incompetent to prove alteration of instrument in possession of administratrix.* Where there is nothing on the face of an instrument to indicate its alteration after it was signed the signer is not competent to testify to the circumstances attending its execution tending to show it had been signed in blank and filled in without authority, where it is held by the administratrix of the person in whose favor it was drawn and is relied upon by such administratrix in her cross-bill in a partition suit by the signer of the instrument.

325—34

APPEAL from the Superior Court of Cook county; the Hon. OSCAR HEBEL, Judge, presiding.

CLARENCE T. MORSE, for appellant.

EDWARD G. BERGLUND, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

Leonora Osborn, who held the legal title in fee simple to lots 12 and 13 in Koester & Zander's Section Line subdivision of the northwest quarter of the northwest quarter of section 27, town 40 north, range 13 east of the third principal meridian, in Cook county, conveyed an undivided one-hundredth interest on October 23, 1922, to Walter A. Freeman, and on November 9, 1922, filed a bill in the superior court of Cook county for the partition of the premises. She made defendants to the bill Emma Rearick, individually and as administratrix to collect of the estate of Christy C. Rearick, and Maria Benham, who she alleged claimed some interest in the premises through Christy C. Rearick by reason of an instrument in the following words and figures: "Pay to the order of Christy C. Rearick an undivided half interest in lots 12 and 13, Koester & Zander's Sec. Line sub., N. W. ¼ of N. W. ¼ Sec. 27, T. 40 N., R. 13 east Cook county, Ill. 3136-8 North Kilpatrick avenue," and signed, "L. Osborn;" that her signature to the instrument is genuine but none of the quoted words appeared above her signature when she made it; that she signed her name to a blank check on the Lake View Trust and Savings Bank, and all the printed words except "pay to the order of" were crossed out by a typewriter and the other words which have been quoted were inserted in typewriting above the signature; that the claims of Emma Rearick and Maria Benham are wholly unfounded, and the bill prays that the title to the premises be quieted against their claims. Freeman filed an answer confessing the allegations of the bill, and Mrs. Rearick, individually and as

administratrix, and Mrs. Benham, filed a joint and several answer and a cross-bill. The cause was referred to a master. Mrs. Benham died, and a supplemental bill was filed alleging her death intestate, leaving her brother and sister, Charles W. Chafey and Thirza L. Harper, as her heirs and making them defendants. On June 23, 1924, all the defendants joined in filing an amended answer and cross-bill. The master prepared his report, to which objections were filed by both parties and overruled. The objections were ordered by the court to stand as exceptions and were overruled, except an objection made by the defendants and cross-complainants to the competency of the complainant in the original bill to testify, which was sustained, and a decree was entered granting partition and dismissing the cross-bill for want of equity.

The amended answer and the cross-bill admitted the legal title as set forth in the bill but alleged that a half interest in the property was held by the complainant in trust for Christy C. Rearick, who with the complainant entered into possession thereof as tenant in common about July 25, 1918, and such possession continued until Rearick's death; that prior to April 2, 1908, Rearick had been the owner of a business school in Chicago known as the Standard School of Syllabic Shorthand, in which he employed the complainant as a teacher; that Rearick and his wife were then occupying a rented apartment and the complainant was occupying another apartment in the same building; that Rearick and the complainant wanted to buy a vacant lot and build a building of two apartments for their occupancy as homes, each contributing one-half of the cost and owning an undivided half interest; that Rearick had no money, and they agreed to buy a vacant lot and build thereon, each paying half the cost and having a half-interest therein; that if the complainant paid more than half the cost the title should be taken in her name and she should have a lien upon Rearick's interest for the excess paid by her, for the re-payment

of which she should hold the title in trust; that in consideration of the agreement of the complainant to advance Rearick's part of the cost she was to become an equal partner in the ownership and management of the Standard School, and a checking account should be established in the name of "N. Osborn," subject to checks signed in that name by the complainant; that upon the completion of the building each should occupy one of the apartments, paying half of the taxes, interest, insurance and up-keep; that thereupon the complainant became a partner in the school and the bank account was opened in the name of "N. Osborn," which in 1919 was changed to "L. Osborn;" that in May, 1909, a vacant lot was purchased on Norwood street, the title to which was taken in the name of the complainant,—half for herself and half as security for Rearick's share of the cost,—and the building was erected and the parties went into possession; that in 1918 this property was sold and the real estate in question in this suit was purchased, title being taken, as the title to the Norwood street property was, in the name of the complainant and subject to the same trust as that property; that each went into possession of one of the apartments in the property in question and remained in possession until the death of Rearick; that the complainant advanced money for the share of Rearick toward the purchase of the Norwood street property and the construction of the building thereon, the amount of which was not known to the defendant, but prior to April 19, 1922, her advancements had all been re-paid to her, and to evidence such re-payment and Rearick's interest in the real estate she executed and delivered the document quoted; that the instrument was not a blank check which the complainant had signed and intrusted to Rearick to be used for a specific purpose and the matter had not been written therein above the signature without the knowledge or consent of the complainant. The answer to the cross-bill denied its material allegations and reiterated the allegations of the bill.

Mrs. Rearick appealed from the decree and her contention is that the instrument signed by the appellee was a sufficient writing to comply with the requirement of the Statute of Frauds that all declarations of trust of any land shall be manifested and proved by some writing signed by the party who is enabled to declare the trust. No particular formality is necessary in the creation of a trust. It is not necessary that the writing should have been made for the purpose of declaring the trust, but such declaration may be found in a letter or memorandum or writing of the most informal nature. Any agreement or contract in writing made by a person having the power of disposal over property, whereby such person agrees or directs that a particular parcel of property or a certain fund shall be held or dealt with in a particular manner for the benefit of another, in a court of equity raises a trust in favor of such other person against the person making such agreement. (1 Perry on Trusts, sec. 82; *Whetsler* v. *Sprague,* 224 Ill. 461; *Fox* v. *Fox,* 250 id. 384.) If the writing makes clear the existence of a trust, if it states a definite subject and object, it is not necessary that every element required to constitute it must be so clearly expressed that nothing is left to inference or implication. (*Orr* v. *Yates,* 209 Ill. 222.) "If the writing makes clear the existence of a trust the terms may be supplied *aliunde.*" *Kingsbury* v. *Burnside,* 58 Ill. 310; *Cagney* v. *O'Brien,* 83 id. 72.

The appellee contends that this instrument was not admissible in evidence, because of its suspicious character, without some explanation by the appellant as to whether the typewriting was placed on the check subsequent to the signature. The objection is based on the hypothesis that from an inspection of the paper it appears to be altered or mutilated in such a way as to create a suspicion that it might have been altered after execution. There is no basis for such a hypothesis. It could not be presumed from its form that the blank check might have been signed with

out anything written on it and afterward filled up without authority by the person to whom it was given. We have not the benefit of an examination of the original instrument, but there is in the record the blank form of check on which it was written. The name of the bank and its address were stricken out by writing the letter "x" repeatedly over the printing, and all the typewritten part of the instrument was written, so far as the record shows, after the words "Pay to the order of," without any break, mutilation or change to give any indication that it was not all written at one time, and that before signature. The erasing of the name of the bank was not a ground for suspicion. It merely indicates that the blank check was used because it happened to be convenient at the time,—at least that conclusion is as plausible as that a blank check was signed and afterward filled up with the name and description of the property as appears in this instrument. It is the law of this State that there is no presumption of law that an instrument has been altered from its condition when executed; but this is a question of fact, and the party producing such instrument is called upon to explain the alteration. (*Waggoner* v. *Clark,* 293 Ill. 256.) It is also the law that there can be no evidence of alteration requiring explanation unless there is some circumstance which might create a suspicion that the alteration might have been made after execution. (*Hutchison* v. *Kelly,* 276 Ill. 438.) When this instrument was offered in evidence by the appellant it was admitted the appellee's signature was genuine. The face of the paper was not such as to create any suspicion of an alteration made after execution. The instrument was therefore admissible in evidence, subject to proof that it had been altered after the appellee had signed it. The appellee testified in regard to it that she signed the check in blank and gave it to Rearick for the specific purpose of being used for the purchase of books, the price of which she did not know, and that she did not

see it again until it was offered in evidence on the trial of a forcible entry and detainer suit which she brought against Mrs. Rearick, after Rearick's death, to recover possession of the part of the property in question occupied by her. This evidence was objected to because she was an incompetent witness. The appellant was defending as the representative of a deceased person, and therefore the appellee was an incompetent witness as to transactions between the appellee and Rearick in the lifetime of the deceased. The court sustained this objection. Therefore there was no competent testimony of any alteration, and the instrument was entitled to be received in evidence and considered in the determination of the issue.

It appears from the evidence that Christy C. Rearick prior to 1902 was engaged in the conduct of a business college at DesMoines, Iowa, and about February 1 of that year he discontinued his connection with that business and received certain notes which had been given by students enrolled in the correspondence course of the college. He came to Chicago and became associated with the American Educational Company, with which he remained for about a year. The appellee had been employed by him while he was at DesMoines and a little later came to Chicago, and she and her sister were employed by Rearick in the business of the American Educational Company. In 1903 Rearick organized a school known as the Standard School of Syllabic Shorthand, which he conducted in the Masonic Temple building for about a year. The next year the school was moved to another building in the down-town district of Chicago, where it remained for about a year and in 1905 was moved to 832 Wrightwood avenue. After the school had been in operation for a short time, and before it was removed to Wrightwood avenue, the appellee was employed by Rearick as a private secretary and later as a teacher of certain subjects, and she remained connected with the school from that time to the time it was closed after Rearick's

death. Rearick devoted his entire time to the school. His hours were from eight o'clock in the morning to eleven o'clock at night. There were three sessions a day—morning, afternoon and evening. He attended to the advertising, wrote the advertising matter and attended to its distribution by circulars and otherwise. His wife in the early years of the school assisted him in this work but not in the later years of his life. They had no social life, because his time was too fully occupied. The teaching in the school was conducted by Rearick and the appellee. The latter had charge of the shorthand and typewriting and taught English and a number of other subjects. Rearick taught English, economics, civics, mathematics, book-keeping and other subjects.

The evidence shows no system in the conduct of the financial affairs of the school. The pupils paid tuition sometimes to Rearick and sometimes to the appellee. There is no competent evidence of the keeping of any accounts. The appellee testified that no books were kept, but her testimony was not competent. Rearick kept no bank account. The appellee kept a bank account, beginning in 1908, under the name of "N. Osborn," which was later changed to another bank under the name of "L. Osborn." She frequently gave Rearick blank checks which she had signed, and he was in the habit of using those checks in payment of his own bills as well as the expense of the school. At the time of his death he had eight such checks in his pocket-book. The evidence does not show, even approximately, what were the receipts of the school, how much either Rearick or the appellee received or what was done with the receipts. Rearick paid the rent of the rooms in which the school was conducted, in cash, and the last lease was made in his name. The appellee testified that in May, 1905, Rearick sold her the furniture and business of the school and agreed to continue in her employ as teacher at a salary of $75 a month, with the privilege of devoting a part of his time to other

business. This evidence was incompetent. The appellee's sister gave similar testimony, but on the whole evidence the agreement is not proved.

On April 8, 1908, J. A. McDowell conveyed to the appellee the property known as 1235 Norwood street for the consideration of $2000, which she paid. Her father had died in 1904 and she received from his personal estate $410.34 and three shares of bank stock, which she still has. From the sale of his real estate she had received at one time $3200 and later an additional $1600. At the time of the purchase of the real estate she owned a note secured by a mortgage for $2500, upon the security of which she borrowed $2000, which she used to pay for the lot. A two-apartment building was constructed on the lot at a cost of $7555.77. It was completed in December, 1909. She mortgaged the lot for $5500, borrowed an additional $600 upon her personal note and paid the balance out of cash which she had. In December, 1917, the mortgage was increased to $7500, and from the increase the appellee received $1444.89 in cash. While the title so remained, Rearick and his family and the appellee each occupied one of the apartments, paying no rent. Repairs were made by Rearick and his wife. In June, 1918, the appellee sold the Norwood street property, receiving $3500 for her equity, and on July 15, 1918, bought the property in controversy, situated on North Kilpatrick avenue, subject to a mortgage for $4000, for $2500. The two families moved from the Norwood street property to the Kilpatrick avenue property, each occupying one of the two apartments and no rent being paid.

It is essential to the creation of a trust that the declaration must make reasonably certain its material terms, and that these terms include, first, the subject matter or property embraced within the trust; second, the beneficiaries in whose behalf the trust is created; third, the nature and quantity of the interests which they are to have; and

fourth, the manner in which the trust is to be performed. (*Orr* v. *Yates, supra; Marble* v. *Marble,* 304 Ill. 229.) The written instrument here, which is the foundation of the cross-bill, in the absence of any context or of any competent evidence throwing light upon the reason or circumstance of its execution, entirely fails to satisfy the requirements of the Statute of Frauds to manifest and prove the creation of a trust.

The decree of the superior court is affirmed.

*Decree affirmed.*