## TSCHIFFELY et al. v. TSCHIFFELY et al.
### No. 7241.

United States Court of Appeals for the District of Columbia.

Decided Aug. 7, 1939.

Robert H. Winn, Herbert S. Ward, and Charles L. Dooley, all of Washington, D. C., for appellants.

R. E. L. Smith, Arthur C. Elgin, and Arthur C. Keefer, all of Washington, D. C., for appellees.

Before GRONER, Chief Justice, and STEPHENS and MILLER, Associate Justices.

STEPHENS, Associate Justice.

The appellants, Claude Tschiffely, Dolly T. Myers, and C. Stott Tschiffely, plaintiffs below, appeal from an order of the District Court of the United States for the District of Columbia dismissing their amended complaint, upon the ground that it was wanting in equity. By this complaint, the appellants sought to establish and enforce an express trust of lands of which, as children of one Frederick A. Tschiffely, Jr., deceased, they claim to be beneficiaries. The applicable section of the Statute of Frauds, D.C.Code (1929) tit. 11, § 3, which we print in the margin,[1] requires that the declaration or creation of a trust of lands shall be proved by a writing. To show that they were able to satisfy this statute, the appellants set out in their complaint the writing upon which they relied. The same follows:

"Wheatlands
"April 6, 1891
"Dear Frederick:
"I deem it expedient and more in keeping with strict business principles, that I transfer unto you or your estate the title to the Ridge Street properties. It is true that the three girls thoroughly understand that these properties are to be willed to you or to your estate by the last survivor in compensation for money loaned to repair and improve these properties, however, in the event Kate should bear children these secondary heirs might not agree to a verbal understanding in the matter, and hence any future litigation would prove distasteful and ruinous to all parties concerned.
"Affectionately your father
"Frederick A. Tschiffely"

It was alleged in the complaint that this letter was returned by Frederick A. Tschiffely, Jr., to his father, with the following notation upon the back:

"Dear Pa,
"Expediency is a fine panacea in many cases, but economy is the better course to follow in this matter. To transfer titles of properties to me would incur unnecessary expenses in recording deed, and furthermore obligate me or my estate to meet any future expenditures such as taxes and necessary repairs.
"For the present we will let the matter rest as it now stands.
"Affectionately,
"F. A. Tschiffely, Jr.
"Post-office Hunting Hill, Md."

According to the allegations of the complaint, the trust said to be evidenced by the foregoing paper arose and was as follows: At some time prior to his death on July 20, 1892, Frederick A. Tschiffely, Sr., had borrowed from his son, Frederick A. Tschiffely, Jr., a sum of money for the purpose of improving and repairing real properties which, subsequent to the date mentioned, became and are now known as Lot 33 in Square 513 in the City of Washington, District of Columbia, being premises numbers 437, 439, 441, 443 and 445 Ridge Street.

---

[1] "All declarations or creations of trust or confidence of any lands, tenements, or hereditaments shall be manifested and proved by some writing signed by the party who is by law enabled to declare such trust or by his last will in writing, or else they shall be utterly void and of none effect."

Frederick A. Tschiffely, Jr., refused to accept a note evidencing this loan, and it was agreed between him and his father that the latter would hold the Ridge Street property in trust for the son and his heirs, subject to the use of the father and his wife, and Elizabeth Whiting Tschiffely, Linda Louise Tschiffely and Kate Stone (later Kate Stone Reichard), during their lives. The three persons last named were daughters of Frederick A. Tschiffely, Sr., and sisters of Frederick A. Tschiffely, Jr. On April 6, 1891, "pursuant to and as evidence of the said trust agreement, the said Frederick A. Tschiffely, Senior, executed a declaration of trust in the form of a letter dated April 6, 1891 and sent by him to his son, Frederick A. Tschiffely, Junior." This was the paper set forth above. Upon his death on July 20, 1892, Frederick A. Tschiffely, Sr., left a last will and testament dated August 29, 1885, by the provisions of which his three daughters above mentioned "were devised certain real estate, including improvements on Ridge Street, N. W., in Washington, District of Columbia, in fee simple subject to the payment of a certain proportion of the rents and profits from such property to the wife of the testator, Elizabeth A. W. Tschiffely, during her life." The three daughters took title to the Ridge Street real estate "pursuant to the said will of Frederick A. Tschiffely, Senior, with full knowledge of and subject to the trust agreement hereinbefore referred to, whereby the said Ridge Street real estate was held by them as trustees for their own use during the lives of them and the survivor of them, the said trust to terminate and the said property to revert on the death of the survivor of them to the said Frederick A. Tschiffely, Junior, and his heirs. Pursuant to such knowledge and the terms of the trust Elizabeth Whiting Tschiffely and Kate Stone Reichard devised their interest in the said Ridge Street properties to Linda Louise Tschiffely, who was the survivor of the said three sisters." Linda Louise Tschiffely died on August 8, 1937. By her last will and testament, she devised the Ridge Street property to Clifton L. Tschiffely (a son of Frederick A. Tschiffely, Jr., and a brother of the appellants) and Lacy Balch Tschiffely, his wife. Clifton L. Tschiffely and his wife, "although knowing of the said trust agreement intend and propose to keep and retain these properties as their own and without regard for the equities therein of these petitioners [the appellants] as children and heirs of the said Frederick A. Tschiffely, Junior, to the manifest injury and damage of your petitioners." Clifton L. Tschiffely and Lacy Balch Tschiffely are the defendants below and the appellees here.

The complaint was dismissed upon motion of the appellees, under which the facts stated above must be taken as true. Upon these facts, the dismissal of the complaint was correct. To satisfy the statute, the writing must disclose the existence and terms of the trust and must not be equivocal, that is, equally consistent with the existence of some other type of obligation. As is stated in 1 Bogert, Trusts & Trustees, § 87, p. 304:

"In general the answer [to the question what must the writing contain] is that the writing must give a correct picture of the oral trust actually agreed upon. It must contain the trust terms which were in fact fixed. The court, on reading the memorandum, with the aid of oral evidence as to the surrounding circumstances, must be able to decree with certainty the administration of the trust actually agreed upon. . . . And an English judge has said:[2] 'I take it, therefore, that when this Court is called upon to establish or act upon a trust of lands by declaration or creation, it must not only be manifested and proved by writing, signed by the party by law enabled to declare the trust, that there is a trust, but it must also be manifested and proved by writing, signed as required, what that trust is.'

* * *

"But a paper which admits rights in another which are explainable on other grounds than the existence of a trust will not do. The writing must by fair interpretation state the presence of an equitable interest by way of trust, and not merely the existence of some actual or prospective beneficial interest in the land or some ill-defined duty of a moral or legal character." The frequently quoted language of Sir Richard Pepper Arden, Master of the Rolls, in Forster v. Hale (1798), 3 Ves.Jr., 696, 707, is:

"Therefore unquestionably it [the trust] is not necessarily to be created by writing; but it must be evidenced by writing; and then the statute is complied with; and indeed the great danger of parol declarations,

---

2 Turner, L. J., in Smith v. Matthews [1861], 3 De G. F. & J. 139, 151.

against which the Statute was intended to guard, is entirely taken away. I admit, it must be proved *in toto;* not only that there was a trust, but what it was."

See to similar effect: 1 Perry, Trusts and Trustees, 7th Ed., 1929, §§ 82, 83; Restatement, Trusts, 1935, § 46. For examples of the application of these principles see: Mullong v. Schneider, 1912, 155 Iowa 12, 134 N.W. 957; Austin v. Young, 1919, 90 N.J.Eq. 47, 106 A. 395; Martin v. Baird, 1896, 175 Pa.St. 540, 34 A. 809; Wolff's Appeal, 1889, 123 Pa.St. 438, 16 A. 470.

The appellants rely upon Osborn v. Rearick, 1927, 325 Ill. 529, 156 N.E. 802; Marie Church v. Trinity Church, 1911, 253 Ill. 21, 97 N.E. 262; and Straw v. Mower, 1925, 99 Vt. 56, 130 A. 687. They cite Osborn v. Rearick as holding that "if the writing makes clear the existence of a trust, if it states a definite subject and object, it is not necessary that every element required to constitute it must be so clearly expressed that nothing is left to inference or implication." The case was an action to quiet title to real property standing in the name of the plaintiff. The defendant asserted that her decedent and the plaintiff had agreed that the plaintiff should purchase the tract in question for both, title to be taken in the name of the plaintiff until the defendant's decedent paid his part of the price. The defendant averred that this had been done and asserted that, to the extent of the share of the defendant's decedent, the plaintiff therefore held the land in trust. The defendant relied upon the following instrument, said to have been executed by the plaintiff as evidence of the interest in the property of the defendant's decedent:

"Pay to the order of Christy C. Rearick [the defendant's decedent] an undivided half interest in lots 12 and 13, Koester & Zander's Sec. Line sub., N. W. ¼ of N. W. ¼, Sec. 27, T. 40 N., R. 13 east Cook county, Ill. 3136-8 North Kilpatrick avenue.
"L. Osborn"

In the course of the opinion, Dunn, J., speaking for the Supreme Court of Illinois, used the language relied upon by the appellant in the instant case. But what the court actually held was that the instrument was insufficient to satisfy the Statute of Frauds. In respect of this, it said:

"It is essential to the creation of a trust that the declaration must make reasonably certain its material terms, and that these terms include: First, the subject-matter or property embraced within the trust; second, the beneficiaries in whose behalf the trust is created; third, the nature and quantity of the interests which they are to have; and, fourth, the manner in which the trust is to be performed. [Authorities cited] The written instrument here, which is the foundation of the cross-bill, in the absence of any context or of any competent evidence throwing light upon the reason or circumstance of its execution, *entirely fails to satisfy the requirements of the statute of frauds to manifest and prove the creation of a trust.*" [Italics supplied] [325 Ill. at page 537, 156 N.E. at page 805]

In Marie Church v. Trinity Church, real property had been purchased upon an oral understanding with a contributor of a part of the purchase price that title would be conveyed to this contributor to be held by it until there came into existence a legally incorporated church to take the property and devote it to a mission. The property was nevertheless conveyed to the defendant Trinity Church, the governing board of which at the time of the purchase had adopted a written resolution (the terms of which do not appear) accepting donation of the lands with thanks. Later the plaintiff Marie Church incorporated for the mission referred to and sought to establish and enforce a trust in the defendant, contending that the resolution satisfied the statute. It was held that it did not. The court said:

"While the writing need not be framed for the express purpose of declaring a trust, it must not only show that there is a trust, but what it is, since the trust must be manifested and proved by the writing." [253 Ill. at page 27, 97 N.E. at page 265]

In Straw v. Mower, the plaintiff, in order to relieve himself of the demands of the administrator of the estate of his deceased sister Mary and of the court in which her estate was in probate that he turn over the possession of certain real and personal property, brought an action in equity in which he sought to charge himself as trustee of the property. He alleged in his complaint that during the lifetime of his sister Mary, she had by deed transferred the property in question to him and to another sister, Rose (since deceased), upon the express understanding that it was not intended to convey absolute title but that the grantees were to take as trustees, the property to be disposed of according to verbal instructions requiring, among other things, that upon the decease of the plaintiff it should go to certain nieces and nephews

of the grantor; and the plaintiff alleged that all of the conditions of the trust except the ultimate disposition referred to had been performed in accordance with the instructions. The deed, set out in the complaint, was in absolute terms except for the word "trustees" after the names of the grantees. A demurrer to the complaint raised the question whether the trust sought to be established was sufficiently evidenced within the Vermont Statute of Frauds. That statute, though somewhat differently worded, was held to embody in substance the requirements of the English Statute of Frauds (29 Car. II, c. 2, § 7), which is the prototype of the statute in the District of Columbia. The Vermont court held that the complaint itself, charging the plaintiff himself as trustee, satisfied the statute. We see no comfort in any of these cases for the appellant. On the contrary, like the cases we cite above, they exemplify the principles which we have announced as the law.

The appellants urge that "the fact that these laymen failed to 'Whereas' a formal declaration of trust into existence at the time should not now prevent this court from giving effect to the clear intent of the parties, as expressed in the letter." This begs the very question in the case— whether the letter does with the required definiteness "manifest and prove" the claimed trust. The Statute of Frauds does not require the use of words of art or formalities of legal diction. The writing required may be informal provided it establishes the fact and the terms of the trust. At the common law a trust of lands could be created by parol. The English Statute of Frauds and the American statutes were enacted to safeguard the title to lands against the effectuation of frauds made easy by secret and parol trusts. We do not, of course, assume to say that a fraud is being attempted in the instant case. But granting to the appellants entire good faith, the case illustrates an additional protective function of the statute when it is noted that nearly half a century has elapsed between the institution of the suit and the death of the alleged settlor, and that the alleged original beneficiary of the trust and the three persons claimed to have taken subject thereto are dead. The statute protects not only against fraud, but also against mistake and infirmity of memory.

The writing in the instant case clearly fails to satisfy the statute. It evidences a desire to transfer property in payment of a loan. It seems to describe some family understanding with respect to the ultimate testamentary disposition of the property referred to. It does not amount to a declaration of a present trust, nor is it evidence of the creation of a trust in the past.

Affirmed.